Joseph A. MONACO, et al., Plaintiffs,

v.

**BEAR STEARNS RESIDENTIAL MORTGAGE CORPORATION, et al., Defendants.**

No. CV 07–05607 SJO (CTX).

United States District Court, C.D. California.

Jan. 28, 2008.

Paul D. Kiesel, Patrick DeBlase, Michael C. Eyerly, Kiesel · Boucher Larson LLP, Beverly Hills, CA, Jeffrey K. Berns, Law Offices of Jeffrey K. Berns, Tarzana, CA, for Plaintiffs.

John B. Sullivan, Mark D. Lonergan, Regina J. McClendon, Severson & Werson, San Francisco, CA, for Defendants.

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS; AND GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO STRIKE**

S. JAMES OTERO, District Judge.

This matter is before the Court on Defendants Bear Stearns Residential Mortgage Corporation and Bear Stearns & Co.'s (collectively, "Defendants") Motion to Dismiss Portions of the First Amended Complaint and Motion to Strike Portions of the First Amended Complaint, both filed November 28, 2007. Plaintiffs Joseph A. Monaco, Anita M. Monaco, and James Brandt (collectively, "Plaintiffs") filed Oppositions to both Motions, to which Defendants respectively replied. The Court found the matter suitable for disposition without oral argument and vacated the hearing set for January 14, 2008. Fed. R.Civ.P. 78(b). For the following reasons, the Court GRANTS IN PART and DENIES IN PART Defendants' Motion to Dismiss and GRANTS IN PART and DENIES IN PART Defendants' Motion to Strike.

## I. BACKGROUND

### A. Factual Background

In April 2006, the Monacos refinanced their home, obtaining an Option Adjustable Rate Mortgage ("ARM") loan from Defendants. (First Am. Compl. ("FAC") ¶ 1.) In April 2007, Brandt refinanced his home, also obtaining an Option ARM loan from Defendants. (FAC ¶ 2.) Plaintiffs' loans were secured by their primary residences.[1] (FAC ¶¶ 1–2.)

Plaintiffs' loan documents include a promissory note (the "Note") and a Truth in Lending Act ("TILA") Disclosure (the "TILA Disclosure"). The Note and TILA Disclosure are form documents, with blanks left for the inclusion of transaction-specific terms, such as the loan amount. According to Plaintiffs, the material terms of the Monacos' loan documents are "substantially identical" to those contained in Brandt's loan documents.[2] (FAC ¶ 2.)

#### 1. The Note

The Note states that, in return for a loan, "I promise to pay U.S. *$258,000.00* (this amount is called 'Principal'), plus interest, to the order of Lender."[3] (FAC Ex. 1 at 1 § 1.)

---

1. In June 2007, the Monacos refinanced their home and filed with the County Recorder of Los Angeles County a deed of reconveyance of the deed of trust securing their home. (Defs.' Req. Judicial Notice Ex. B.) Pursuant to Federal Rule of Evidence 201, the Court takes judicial notice of the Monacos' deed of reconveyance. *See W. Fed. Sav. v. Heflin,* 797 F.Supp. 790, 792 (N.D.Cal.1992) (taking judicial notice of documents in a county public record, including deeds of trust).

2. Accordingly, Plaintiffs only attach the Monacos' Note and TILA Disclosure to the First Amended Complaint. (FAC Ex. 1.) The following description is thus based on the Monacos' loan documents, as attached.

3. The underlined text designates the terms that were entered in the blanks. The non-underlined text designates the form text.

Regarding interest, Section 2 of the Note, entitled "**INTEREST**," states "I will pay interest at a yearly rate of *1.000 %*." (FAC Ex. 1 at 1 § 2.) Section 2 further states that "[t]he interest rate I will pay may change in accordance with Section 4 of this Note." (FAC Ex. 1 at 1 § 2.) Section 4, entitled "**ADJUSTABLE INTEREST RATE**," states that the rate "will change" on the date when the first payment is due and "may change" on the first day of every month thereafter. (FAC Ex. 1 at 2 § 4(A).) Section 4 states that the rate "will never be greater than *9.950%*" and "will never be lower than *3.500 %*." [4] (FAC Ex. 1 at 2 § 4(C).)

Regarding payments, Section 3 of the Note, entitled "**PAYMENTS**," states "I will pay principal and interest by making a payment every month." (FAC Ex. 1 at 1 § 3(A).) Section 3 further states "I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal." (FAC Ex. 1 at 1 § 3(A).)

Initial monthly payments are "in the amount of U.S. *$829.83* " (FAC Ex. 1 at 1–2 § 3(B))—an amount that would fully amortize the loan if the 1% interest rate remained in effect during the entirety of the loan's term (FAC ¶ 122). Section 3 states that this amount "may change" pursuant to Section 5. (FAC Ex. 1 at 1–2 § 3(B)-(C).) According to Section 5, entitled "**PAYMENT CHANGES**," monthly payments will change annually, if at all, to the amount needed to fully amortize the

loan at the preceding month's interest rate.[5] (FAC Ex. 1 at 2–3 § 5(A)-(B).) Section 5 further states that, if monthly payments are "not sufficient to cover the amount of the interest due[,] then any accrued but unpaid interest will be added to Principal and will accrue interest at the rate then in effect. This process is known as negative amortization." (FAC Ex. 1 at 2–3 § 5(A).)

Section 5 also provides that the borrower may be provided with one of three increased payment options: (1) interest only—i.e., "pay only the amount that would pay the interest portion of the monthly payment at the current interest rate"; (2) fully amortized—i.e., "pay the amount necessary to pay the loan off (Principal and interest) at the Maturity Date in substantially equal payments"; and (3) fifteen year amortized—i.e., "pay the amount necessary to pay the loan off (Principal and Interest) within a fifteen (15) year term from the first payment due date in substantially equal payments." (FAC Ex. 1 at 3–4 § 5(F).)

### 2. *The TILA Disclosure*

The TILA Disclosure states, among other things, that the loan has a variable rate feature, that the current index rate is 3.888%, and that there may be a prepayment penalty if the loan is repaid early. (FAC Ex. 1 at 7.) It also includes an estimated payment schedule, with payments increasing annually. (FAC Ex. 1 at 7.)

### B. *Procedural Background*

On August 28, 2007, Plaintiffs filed the instant action on behalf of all California

---

4. Interest rate changes are calculated by adding 3.5% to the "Current Index," which is based on the twelve month average of the annual yields on actively traded United States Treasury Securities. (FAC Ex. 1 at 2 § 4(B)-(C).)

5. Changes in the minimum payment are subject to an annual 7.5% cap. (FAC Ex. 1 at 3 § 5(B).)

consumers who were sold Defendants' Option ARM loan. Plaintiffs claim they were led to believe by Defendants that the low initial interest rate on their loan would be fixed for three to five years and that their minimum monthly payments would be applied each month toward interest and principal, resulting in amortization. Instead, Plaintiffs were immediately charged a much greater interest rate and their monthly payments were unable to cover interest, resulting in negative amortization. Based on these allegations, Plaintiffs assert seven causes of action.

First, Plaintiffs claim that Defendants violated TILA by: (a) failing to disclose the actual interest rate; (b) failing to disclose negative amortization; (c) failing to disclose that the initial rate is discounted; and (d) failing to disclose the composite interest rate. Second, Plaintiffs claim that Defendants violated California's Unfair Competition Law (the "UCL") by violating TILA, as described above. Third, Plaintiffs claim that Defendants violated the UCL by engaging in unfair, fraudulent, and deceptive business practices. Fourth, Plaintiffs claim that Defendants breached the Note by adjusting the initial interest rate shortly after loan origination and by applying monthly payments only to interest. Fifth, Plaintiffs claim that Defendants breached the implied covenant of good faith and fair dealing on the basis of the same violations that support the breach of contract claim. Sixth, Plaintiffs claim that Defendants violated the UCL by forcing Plaintiffs to sign unconscionable loan contracts. The seventh cause of action seeks declaratory relief on the basis of the prior allegations.

In light of the First Amended Complaint, Defendants have brought two motions. First, Defendants move to dismiss: (a) the first cause of action as to the Monacos; and (b) the second, fourth, and fifth causes of action as to all plaintiffs. Second, Defendants move to strike: (a) allegations about the Note that appear in the first cause of action; and (b) punitive damages allegations in the fifth cause of action. The Motions are considered in turn.

## II. DISCUSSION

### A. Motion to Dismiss

In order to survive a motion to dismiss for failure to state a claim, plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, —— U.S. ——, ——, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). While a complaint need not plead "detailed factual allegations," the factual allegations it does include "must be enough to raise a right to relief above the speculative level." *Id.* at 1964–65. In considering whether the complaint is sufficient to state a claim, all material allegations will be taken as true and construed in the light most favorable to the plaintiff. *NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir.1986).

### 1. Motion to Dismiss the First Cause of Action Only as to the Monacos

TILA provides borrowers two remedies for disclosure violations: (1) rescission, 15 U.S.C. § 1635; and (2) damages, 15 U.S.C. § 1640. Defendants argue that the Monacos' TILA claim should be dismissed because they cannot recover either of these remedies.

■ First, Defendants argue that the Monacos cannot rescind because they refinanced their loan, and the deed of trust securing Defendants' loan has been reconveyed. In *King v. California*, the Ninth Circuit held that a borrower cannot rescind a loan under TILA where the borrower has refinanced the loan, such that the underlying deed of trust has been "su-

perseded." 784 F.2d 910, 913 (9th Cir. 1986) ("The loan ... cannot be rescinded, because there is nothing to rescind."). Plaintiffs urge the Court not to follow *King* because courts in other circuits have not followed *King*. The Court is not at liberty to do so, as courts in this circuit are bound to follow the precedent of the Ninth Circuit. *See Zuniga v. United Can Co.*, 812 F.2d 443, 450 (9th Cir.1987) ("District courts are, of course, bound by the law of their own circuit, and are not to resolve splits between circuits no matter how egregiously in error they may feel their own circuit to be.") (internal quotation marks omitted). Accordingly, the Monacos cannot rescind the loan.[6]

■ Second, Defendants argue that the Monacos cannot recover damages because they filed suit too late. An action for damages under TILA must be brought within one year from the alleged violation. 15 U.S.C. § 1640(e). The limitations period runs from "the date of consummation of the transaction." *King*, 784 F.2d at 915. "Consummation means the time that a consumer becomes contractually obligated on a credit transaction." 12 C.F.R. § 226(a)(13). Here, Plaintiffs brought the instant action on August 28, 2007, more than a year from "consummation" of the Monacos' loan from Defendants, which occurred in April 2006. In their Opposition, Plaintiffs do not argue to the contrary; in fact, they do not brief the issue at all.

Accordingly, the Court GRANTS Defendants' Motion to Dismiss the first cause of action as to the Monacos, without leave to amend.

### 2. *Motion to Dismiss the Second Cause of Action*

■ Plaintiffs' second cause of action claims that Defendants committed unlawful business practices under California's UCL. (FAC ¶ 85.) *See Lazar v. Hertz Corp.*, 69 Cal.App.4th 1494, 82 Cal.Rptr.2d 368, 375 (1999) ("In effect, the UCL borrows violations of other laws ... and makes those unlawful practices actionable under the UCL."). The unlawful business practices to which Plaintiffs refer are Defendants' alleged TILA violations. (FAC ¶ 87.) Pursuant to the UCL, Plaintiffs seek "the imposition of a constructive trust over, and restitution of, the monies collected and realized by Defendants as a result of their conduct." (FAC ¶ 91.) Defendants argue that, if Plaintiffs are able to pursue their second cause of action, Plaintiffs would be permitted to recover remedies not provided for under TILA.[7] As such, Defendants argue that the UCL is preempted by TILA.

TILA's enforcement scheme does "not annul, alter, or affect the laws of any State relating to the disclosure of information in connection with credit transactions, except to the extent that those laws are inconsistent with the provisions of this subchapter and then only to the extent of the inconsistency." 15 U.S.C. § 1610(a)(1). Defendants argue that, by limiting the remedies available under TILA, Congress sought to avoid over-penalizing creditors, and thus,

---

6. Plaintiffs also argue that *King* is distinguishable from the instant case because in *King*, the borrower's residence remained vested in the bankruptcy trustee. Plaintiffs' argument is unpersuasive. There is no indication that the holding in *King* depended on the fact that the bankruptcy trustee retained title to the borrower's residence. Indeed, the rule in *King* has been upheld in the case of a non-bankrupt borrower. *See Mijo v. Avco Fin.*

*Servs. of Haw., Inc.*, 937 F.2d 613 (9th Cir. 1991).

7. Additionally, Defendants argue that Plaintiffs would be able to take advantage of the UCL's four-year statute of limitations, Cal. Bus. & Prof.Code § 17208, as opposed to being constrained by TILA's one-year statute of limitations.

state laws imposing additional penalties on creditors are "inconsistent" with TILA. The Court is unpersuaded.

"A State law is inconsistent [with TILA] if it requires a creditor to make disclosures or take actions that contradict the requirements of the Federal law." 12 C.F.R. § 226.28(a)(1). Here, Plaintiffs' second cause of action under the UCL is based solely on Defendants' alleged TILA violations. Nowhere do Plaintiffs suggest that Defendants failed to make certain disclosures or take certain actions not encompassed by TILA. Plaintiffs invoke the UCL solely for the additional remedies offered thereunder. "Additional penalties are not inconsistent with TILA, but merely provide greater protection to consumers." *In re First Alliance Mortgage Co.*, 280 B.R. 246, 251 (C.D.Cal.2002). Accordingly, the Court finds that the UCL is not preempted by TILA. *See id.*

Defendants' Motion to Dismiss Plaintiffs' second cause of action is DENIED.[8]

### 3. *Motion to Dismiss the Fourth and Fifth Causes of Action*

Plaintiffs' fourth cause of action for breach of contract and fifth cause of action for breach of the implied warranty of good faith allege that Defendants breached the Note by immediately raising the interest rate on Plaintiffs' loans and by not applying Plaintiffs' monthly payments to interest and principal. (FAC ¶¶ 119, 132, 133.) Defendants argue that the Note, attached to the First Amended Complaint, demonstrates that Plaintiffs' claims are without merit.

■■■ "Resolution of contractual claims on a motion to dismiss is proper if the terms of the contract are unambiguous." *Bedrosian v. Tenet Healthcare Corp.*, 208 F.3d 220 (9th Cir.2000); *see also Westlands Water Dist. v. U.S. Dep't of Interior*, 850 F.Supp. 1388, 1408 (E.D.Cal.1994) ("A motion to dismiss cannot be granted against a complaint to enforce an ambiguous contract."). A contract provision will be considered ambiguous when it is capable of two or more reasonable interpretations. *Bay Cities Paving & Grading, Inc. v. Lawyers' Mut. Ins. Co.*, 5 Cal.4th 854, 21 Cal.Rptr.2d 691, 855 P.2d 1263, 1271 (1993). Language in a contract must be interpreted as a whole and in the circumstances of the case. *Bank of W. v. Superior Court*, 2 Cal.4th 1254, 10 Cal.Rptr.2d 538, 833 P.2d 545, 552 (1992). Where the language "leaves doubt as to the parties' intent," *Consul Ltd. v. Solide Enters., Inc.*, 802 F.2d 1143, 1149 (9th Cir.1986), the motion to dismiss must be denied. *See id.*

#### a. *The Note's Provisions Regarding the Interest Rate Are Ambiguous.*

■■■ As to Plaintiffs' first claim—that Defendants breached the Note by immediately raising the 1% fixed interest rate—the Court finds that the language governing the interest rate Plaintiffs must pay is ambiguous. Section 2 of the Note states that Plaintiffs "will pay" interest at a yearly rate of 1% but that this rate "may change" pursuant to Section 4. However, Section 4 states that the interest rate "will change" on the first payment due date and that it "will never be lower than 3.500%." Section 4 is thus inconsistent with Section 2; whereas Section 2 states that a change in the interest rate is a mere possibility, Section 4 states that it is an absolute certainty.[9] Because the Court is to strive to

---

8. The Monacos thus may pursue their UCL claims.

9. To be consistent with Section 4, Section 2 should state that the 1% interest rate "will"— not "may"—change in accordance with Section 4. Despite Defendants' urging, the Court will not read "may" to mean "will," as the Court is unable to determine on the basis of the Note whether the parties mutually intended for Section 4 to apply. The uncertainty created by the use of the term "may" will

"give effect to every provision" of a contract, *Nat'l City Police Officers' Ass'n v. City of National City,* 87 Cal.App.4th 1274, 105 Cal.Rptr.2d 237, 239 (2001), the Court concludes that the Note is reasonably susceptible to the interpretation that Section 4 applies and to the interpretation that Section 4 may not apply.[10]

Defendants' Motion to Dismiss on this basis is accordingly DENIED.

b. *The Note's Provisions Regarding How Payments Are to Be Applied Are Ambiguous.*

■ As to Plaintiffs' second claim—that Defendants breached the Note by not applying monthly payments to principal and interest—the Court also finds that the relevant contractual language is ambiguous in the context of the Note as a whole. Section 3 states "I will pay principal and interest by making a payment every month." According to Plaintiffs, one could reasonably interpret this statement to mean that payments will be applied to both principal and interest, in spite of later statements in the Note that negative amortization is a possibility. Defendants counter that the only reasonable interpretation of the statement is that it describes Plaintiffs' *obligation* to make payments, leaving the question of how those payments will be *applied* to other sections. The Court agrees with Plaintiffs.

First, the meaning Defendants would ascribe to the statement would likely render it superfluous in light of other provisions in Section 3, a result that is to be avoided. *See* Cal. Civ.Code § 1641 ("The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other."). Immediately below the disputed statement is the following provision: "I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note." The Court finds that this latter statement more accurately describes Plaintiffs' payment obligations. On this basis, it is certainly reasonable, if not preferred, to interpret the former disputed statement along the lines suggested by Plaintiffs.

Second, later provisions of the Note arguably support Plaintiffs' interpretation. In Section 5(F), the Note describes three additional payment options, which speak specifically to the question of how payments are to be allocated between interest and principal. Two of these payment options are for amortized payments, and they are described as follows: "Pay the amount necessary to pay the loan off (Principal and interest) . . . ." This language is quite similar to the language employed in Section 3: "I will pay principal and interest . . . ." On this basis, one could reasonably conclude that the statement in Section 3 refers to an amortized payment plan.

Third, in light of the Court's finding that the Note is ambiguous as to the applicable interest rate that will apply, one could reasonably conclude that monthly pay-

therefore be "interpreted most strongly against" Defendants—"the party who caused uncertainty to exist." Cal. Civ.Code § 1654.

**10.** "Parol evidence may be admitted to explain the meaning of a writing when the meaning urged is one to which the written contract term is reasonably susceptible or when the contract is ambiguous." *Powers v. Dickson,* 54 Cal.App.4th 1102, 63 Cal.Rptr.2d 261, 266 (1997). Plaintiffs allege that "Defen-

dants impliedly and expressly represented to Plaintiffs and Class members that . . . said loans would have a fixed interest rate equal to a low promised interest rate for a period of three (3) to five (5) years." (FAC ¶ 132.) Because the Note is ambiguous as to the applicability of Section 4, parol evidence is admissible to ascertain the intent of the parties. On the basis of the allegations in the First Amended Complaint, Plaintiffs have put forth facts sufficient to state a claim for relief.

ments will amortize the loan. Indeed, were the interest rate to remain at 1%, a possibility under Section 3 of the Note as discussed above, the initial monthly payments would fully amortize the loan.

For the above reasons, the Court finds that, despite language in the Note indicating that negative amortization is a possibility,[11] one could reasonably conclude that monthly payments will be applied to both principal and interest.

Defendants' Motion to Dismiss on this basis is thus DENIED.

### B. *Motion to Strike*

 Before responding to a pleading, a party may move to strike any "redundant, immaterial, impertinent or scandalous matter." Fed.R.Civ.P. 12(f). "[T]he function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial ...." *Sidney–Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir.1983). Generally, motions to strike are "regarded with disfavor." *Bureerong v. Uvawas*, 922 F.Supp. 1450, 1478 (C.D.Cal. 1996). In determining such a motion, a district court must view the pleadings in the light most favorable to the non-moving party. *See Taylor v. Quall*, 471 F.Supp.2d 1053, 1059 (C.D.Cal.2007).

#### 1. *Motion to Strike Paragraphs from Plaintiffs' First Cause of Action*

 Defendants move to strike paragraphs 56 through 59, 61 through 62, and 67 through 69 from Plaintiffs' first cause of action for violations of TILA. These paragraphs refer to provisions in the Note regarding the disclosure of the loan's interest rate and payment schedule. Defendants move to strike these paragraphs on the ground that they are irrelevant to Plaintiffs' TILA claim. (Mot. Strike 2.)

TILA is a disclosure statute; it requires lenders to "clearly and conspicuously" make certain disclosures to borrowers. 12 C.F.R. § 226.17(a). Specifically, lenders who make variable interest rate loans that are secured by a consumer's principal dwelling and have a term greater than one year must provide the consumer two sets of disclosures. 12 C.F.R. § 226.19(b). The first set must be given "at the time the application form is provided or before the consumer pays a non-refundable fee, whichever is earlier" and includes "[t]he booklet titled Consumer Handbook on Adjustable Rate Mortgages" and "[a] loan program disclosure for each variable-rate program in which the consumer expresses an interest." 12 C.F.R. § 226.19(b)(1)-(2). The second set is given at the time of closing and consists of various disclosures, including the finance charge, the annual percentage rate, and a statement "that the transaction includes a variable-rate feature" and "that variable-rate disclosures have been provided earlier." 12 C.F.R. § 226.18(d), (e), (f)(2). This latter set of disclosures must be "grouped together" and "segregated from everything else." 12 C.F.R. § 226.17(a)(1).

Here, the TILA Disclosure described in the First Amended Complaint refers to the latter set of disclosures.[12] This document

---

**11.** Just as the Note uses the term "may" to warn of an interest rate change that is certain to occur, the Note describes negative amortization as a possibility when in fact it is certain to occur under the terms set by Defendants. At the top of the Note's first page, the borrower is warned that the Note "may require"—as opposed to, more accurately, "will require"—unpaid interest to be added to loan principal. Defendants have drafted a Note that creates uncertainty about its provisions and that precludes the Court from ascertaining the intent of the parties solely on the basis of the written instrument.

**12.** Plaintiffs make no reference to the first set of disclosures in the First Amended Complaint.

was provided to Plaintiffs separate from the Note. (FAC ¶¶ 1–2.) Because TILA does not expressly require additional disclosures in the promissory note, Defendants argue that the question of whether Defendants violated TILA is to be answered solely on the basis of the TILA Disclosure. Accordingly, Defendants seek to strike from Plaintiffs' TILA claim any references to the Note, and the disclosures or lack thereof contained therein.

However, as Defendants acknowledge, the TILA disclosures must "reflect the terms of the legal obligation between the parties." 12 C.F.R. § 226.17(c)(1). Defendants argue that this requirement does not save Plaintiffs' allegations because "the challenged allegations do not allege any such inconsistency or difference between the TILA disclosures and the note's provisions." (Reply 3.) The Court's review of the challenged paragraphs compels a different conclusion. Plaintiffs' allegations go to the ambiguity of the Note. To the extent that Plaintiffs' allegations do not allege specific instances of inconsistency, that is because the Note's provisions are uncertain. The Court finds that, in determining whether the TILA disclosures accurately reflect the terms of the parties' legal obligation, a claim that said terms are ambiguous is relevant to the analysis.

Defendants' Motion to Strike is accordingly DENIED as to Plaintiffs' first cause of action.

### 2. *Motion to Strike Paragraphs from Plaintiffs' Fifth Cause of Action*

 Defendants move to strike paragraphs 140, 142, and 143 from Plaintiffs' fifth cause of action for breach of the implied covenant of good faith and fair dealing. Defendants move to strike these paragraphs on the ground that they are included to support an award of punitive damages, and an award of punitive damages is not recoverable for breach of the implied covenant of good faith and fair dealing outside the insurance context. *See Copesky v. Superior Court,* 229 Cal.App.3d 678, 280 Cal.Rptr. 338, 345 (1991). Plaintiffs raise no opposition to Defendants' argument.

Accordingly, Defendants' Motion to Strike as to Plaintiffs' fifth cause of action is GRANTED and these paragraphs are STRICKEN.

 In order to preserve their request for punitive damages, Plaintiffs seek leave to amend the First Amended Complaint to add a cause of action for fraudulent concealment, which would support such an award. Concealment, or a failure to disclose, can constitute actionable fraud in four circumstances: (1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material fact. *LiMandri v. Judkins,* 52 Cal.App.4th 326, 60 Cal. Rptr.2d 539, 543 (1997). The Court finds that, at the very least, Plaintiffs have alleged facts sufficient to support a claim for relief under the fourth circumstance. As discussed in the context of Defendants' Motion to Dismiss Plaintiffs' breach of contract claim, the Note arguably suppresses material facts regarding the loan's interest rate and how monthly payments will be applied between principal and interest.

Accordingly, the Court GRANTS Plaintiffs' request for leave to amend the First Amended Complaint to assert additional facts in support of a cause of action for fraudulent concealment. These allegations must meet the heightened pleading standards of Federal Rule of Civil Procedure 9(b).

### III. *RULING*

For the foregoing reasons, Defendants' Motion to Dismiss is GRANTED IN PART and DENIED IN PART and Defendants' Motion to Strike is GRANTED IN PART and DENIED IN PART. Plaintiffs' first cause of action as to the Monacos is DISMISSED with prejudice. Paragraphs 140, 142, and 143 of the First Amended Complaint are STRICKEN. Plaintiffs are granted leave to amend to assert a claim for fraudulent concealment. Plaintiffs must file a Second Amended Complaint on or before February 11, 2008, and Defendants must answer or otherwise respond on or before February 22, 2008.

IT IS SO ORDERED.