**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| NEIL WALLACE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 2018-0900-KSJM |
| | ) | |
| MT. POSO COGENERATION | ) | |
| COMPANY, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER DENYING MOTION TO DISMISS**

1.      Defendant Mt. Poso Cogeneration Company, LLC ("Defendant") operates a biofuel power plant in California that produces substantial amounts of ash.  Due to storage constraints, the ash must be removed at least once every 72 hours.  Defendant and non-party Calash, LLC ("Calash") executed the Ash Management Agreement (the "Agreement") in October 2011, under which Calash would remove ash from Defendant's power plant and invoice Defendant using a contractually determined formula.  Defendant terminated the Agreement in September 2016.  Calash was suspended by the Secretary of State of California in May 2017.

2.      Plaintiff Neil Wallace alleges that Calash assigned him certain rights under the Agreement.  On October 29, 2018, Wallace sent a demand letter to Defendant claiming that a recent audit revealed that Defendant underpaid Calash for

1

services. Wallace demanded arbitration of that claim under Section 11 of the Agreement. After Defendant refused to arbitrate, on December 12, 2018, Wallace filed his Verified Complaint (the "Complaint") in this Court seeking to compel arbitration.[1]

3. Defendant moved to dismiss the Complaint under Court of Chancery Rule 12(b)(6) on February 6, 2019.[2] The parties completed briefing on August 16, 2019,[3] and the Court heard oral arguments on October 18, 2019.

4. Defendant made the following four arguments in support of dismissal. First, Wallace could not assert rights under the Agreement because the assignment was from Calash, Inc., not Calash, LLC. Second, Wallace lacked the authority to assert rights under the Agreement because Calash, LLC was suspended by the California authorities and thus could not maintain a suit, a disability that travels with any assignment. Third, the Agreement prohibited assignments absent Mt. Poso's consent, which Mt. Poso did not provide. Fourth, the arbitration provision terminated when the Agreement terminated.

---

[1] C.A. No. 2018-0900-KSJM Docket ("Dkt.") 1, Verified Compl. ("Compl.").

[2] Dkt. 10, Def.'s Mot. to Dismiss.

[3] Dkt. 19, Mt. Poso Cogeneration Company, LLC's Br. in Supp. of Mot. to Dismiss ("Def.'s Opening Br."); Dkt. 26, Pro Se Pl.'s Answering Br. to Mot. to Dismiss; Dkt. 27, Mt. Poso Cogeneration Company, LLC's Reply Br. in Supp. of Mot. to Dismiss ("Def.'s Reply Br.").

5. Between the close of briefing and oral arguments on the motion to dismiss, Wallace sought leave to amend the Complaint to demonstrate that the assignment was in fact from Calash, LLC and that Calash, LLC was not suspended by the California authorities. At oral argument, the Court granted Wallace's request to amend the Complaint, thereby mooting the first two of Defendant's dismissal arguments. This Order resolves Defendant's two remaining arguments.

6. Under Rule 12(b)(6), the Court may grant a motion to dismiss for failure to state a claim if a complaint does not allege facts that, if proven, would entitle the plaintiff to relief.[4] "[T]he governing pleading standard in Delaware to survive a motion to dismiss is reasonable 'conceivability.'"[5] When considering such a motion, the Court must "accept all well-pleaded factual allegations in the [c]omplaint as true . . . , draw all reasonable inferences in favor of the plaintiff, and deny the motion unless the plaintiff could not recover under any reasonably conceivable set of circumstances susceptible of proof."[6] The reasonable conceivability standard asks whether there is a possibility of recovery.[7] The Court, however, need not "accept conclusory allegations unsupported by specific facts

---

[4] Ct. Ch. R. 12(b)(6).

[5] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Hldgs. LLC*, 27 A.3d 531, 537 (Del. 2011).

[6] *Id.* at 536 (citing *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896–97 (Del. 2002)).

[7] *Id.* at 537 n.13.

or . . . draw unreasonable inferences in favor of the non-moving party."[8]  "A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."[9]  The Agreement is attached to the Complaint and thus properly before the Court at this stage.[10]

7.      The Agreement contains a choice-of-law provision dictating that it should be construed in accordance with California law.[11]  Delaware honors these types of provisions "so long as the jurisdiction selected bears some material relationship to the transaction."[12]  Under California law, contracts are interpreted to effect the mutual intent of the parties as judged at the time the contract was formed.[13]  "When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible."[14]  The "whole of the contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other."[15]

---

[8] *Price v. E.I. du Pont de Nemours & Co., Inc.*, 26 A.3d 162, 166 (Del. 2011) (citing *Clinton v. Enter. Rent-A-Car Co.*, 977 A.2d 892, 895 (Del. 2009)).

[9] Ct. Ch. R. 10(c).

[10] Compl. Ex. B.

[11] Agreement § 11.5.

[12] *J.S. Alberici Const. Co. v. Mid-West Conveyor, Co.*, 750 A.2d 518, 520 (Del. 2000) (citing *Annan v. Wilm. Tr. Co.*, 559 A.2d 1289, 1293 (Del. 1991)).

[13] Cal. Civ. Code § 1636.

[14] *Id.* § 1639.

[15] *Id.* § 1641.

## A. The Anti-Assignment Provision Does Not Unambiguously Prohibit the Assignment.

8. Defendant argues that Section 11.6 of the Agreement prohibited Calash from assigning rights under the Agreement to Wallace without the prior consent of Mt. Poso, which Wallace failed to obtain. Section 11.6 provides:

> Calash shall not assign or otherwise convey any of its rights, title, and interest under this Agreement without the prior written consent of [Mt. Poso], which Mt. Poso may not arbitrarily withhold; provided, however, that without any such consent, Calash or its successor or permitted assigns may assign any or all rights, titles, and interest hereunder:
>
> a) As security to any person, corporation, bank, trust company, association, or other business or governmental entity as security in connection with obtaining or arranging financing for Calash or any affiliate of Calash, or
>
> b) To any person, corporation, bank, trust company, association or other business or governmental entity in order to enforce any security assignment described in Section 11.6(a); and provided that with [Mt. Poso's] prior consent, which shall not be unreasonably withheld, Calash may assign any or all of its rights, titles and interests hereunder to:
>
> c) Any entity controlled by, controlling or under common control with Calash, or
>
> d) Any successor, entity by merger, consolidation, or by sale of substantially all assets.[16]

---

[16] Agreement § 11.6.

9. The parties' dispute centers on subsection (d) of the above language. Defendant argues that the plain language of the exception allowed Calash to assign rights only to a "successor *entity*," by the three enumerated mechanisms that followed that phrase, that is, "[i] by merger, [ii] consolidation, or [iii] by sale of substantially all of its assets."[17] Wallace is not an entity, and thus the three enumerated mechanisms do not apply to him, according to Defendant. Wallace responds that "by sale of substantially all assets" presents an independent basis for satisfying subsection (d) unconnected to the language preceding it in that subsection. Wallace further contends that his assignment qualifies under that clause because the assignment constituted a "sale of substantially all assets" of Calash.[18]

10. Defendant's interpretation is problematic because it ignores the comma preceding "entity," which suggests that "successor" is a noun on a list and not an adjective. Perhaps more problematic, Defendant's interpretation ignores the word "by" preceding "sale of substantially all assets." Typically, repeating a determiner, such as "by," signals no carryover effect in a postpositive modifier. Both of these factors suggest that the clause "by sale of substantially all assets" is, as Wallace suggests, the last co-equal clause in a series of three, as in: "[i] [a]ny successor, [ii] entity by merger, consolidation, [iii] or by sale of substantially all assets."

---

[17] *Id.* § 11.6(d) (emphasis added).

[18] *Id.*

6

11.    Wallace's interpretation is also problematic.  For starters, one could argue that it renders the exception found in subsection (d) broad enough to swallow the general prohibition against assignments.  Moreover, Wallace's interpretation renders other aspects of Section 11.6 nonsensical.  Despite the (a) through (d) lettering scheme, subsection (d) appears to follow as a subpart of the proviso in subsection (b) rather than the proviso in the general prefatory language of Section 11.6.  This conclusion flows from basic grammatical construction— subsection (d) is a prepositional phrase in need of a preposition, and the preposition "to" appears at the end of subsection (b), but not in the general prefatory language of Section 11.6.  This conclusion also flows from the punctuation—the colon at the end of subsection (b) signals an intent to introduce a list of items.  Thus, in effect, subsection (d) is part of a proviso within a proviso.  Read as part of subsection (b), an assignment "by sale of substantially all assets" *requires* Mt. Poso's consent.

12.    This interpretative exercise reveals that Section 11.6 is far from clear. As the movant, Defendant bears the burden.  To prevail at this stage, Defendant's reading must be the only reasonable construction.[19]  Because it is not, this Court rejects it.

---

[19] *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 615 (Del. 2003) (citing *Vanderbilt Income & Growth Assocs. v. Arvida/JMB Managers, Inc.*, 691 A.2d 609, 613 (Del. 1996)); *Monaco v. Bear Stearns Residential Mortg. Corp.*, 554 F. Supp. 2d 1034, 1040 (C.D. Cal. 2008) (quoting *Bedrosian v. Tenet Healthcare Corp.*, 208 F.3d 220 (9th Cir. 2000)).

13.     Defendant argues in the alternative that even if Wallace is deemed a successor to Calash under subsection (d), Wallace did not acquire substantially all of Calash's assets.[20]  At this stage, the Court finds that since Calash is now defunct, it is reasonably conceivable that the claim at issue constitutes substantially all of Calash's assets.[21]

**B.     The Arbitration Clause Is Not Terminated Upon Termination of the Agreement.**

14.     The arbitration clause of the Agreement provides that "[a]ny disputes between the Parties as to the interpretation or enforcement of this Agreement shall be resolved by negotiated agreement; or, failing that, by arbitration."[22]  Defendant does not dispute that the plain language of this provision covers Wallace's claims. Instead, Defendant argues that by terminating the Agreement, Defendant terminated the arbitration provision.

15.     For this argument, Defendant points to the termination provision of the agreement, which provides that "[u]pon termination, the Parties shall have no further

---

[20] *See* Def.'s Opening Br. at 14 ("Thus, if the assignment actually does give Plaintiff Calash, LLC's rights under the AMA . . . , then it also conclusively demonstrates that Plaintiff does not qualify for the Section 11.6(d) exception because Plaintiff only acquired Calash, LLC's claims against Mt. Poso, not substantially all of its assets.").

[21] Defendant does not dispute this notion.  Oral Arg. Tr. at 12:11–13:14 (counsel conceding "I certainly can't dispute that" when asked if "it's reasonable to infer . . . that [Calash is] nonoperational").

[22] Agreement § 11.2.

8

obligations to perform under this Agreement" except as specified.[23] The termination provision then goes on to specify three continued obligations, none of which expressly reference the obligation to arbitrate. Relying on the *expressio unius* doctrine, Defendant argues that because the termination provision failed to expressly specify that the arbitration provision survives termination, the parties have "no further obligations" to perform under the arbitration provision.[24]

16. Defendant's interpretation of the termination provision is inconsistent with California law, which governs this dispute.[25] California statutory law compels arbitration if there is a valid agreement to arbitrate and no grounds exist to void the agreement.[26] In addition, "California has a strong public policy in favor of arbitration and any doubts regarding the arbitrability of a dispute are resolved in favor of arbitration."[27] In view of this policy, California courts have adopted the

---

[23] *Id.* § 10.1.

[24] Def.'s Opening Br. at 10–12; Def.'s Reply Br. at 7–9.

[25] *See supra* ¶ 7.

[26] Cal. Civ. Proc. Code § 1281.2. Section 1281.2 lists a number of grounds a party can assert to invalidate an arbitration clause. Arbitration will be compelled unless (a) the party seeking arbitration has waived its right to arbitration; (b) grounds exist that would allow a party to rescind the agreement; (c) a party to the agreement is also party to a pending court action with a third party that might lead to inconsistent outcomes with any arbitration; or (d) the petitioner is a state or federally chartered depository institution seeking to apply an arbitration agreement created fraudulently without the consumer's consent. Defendant does not argue that any of these apply to this case.

[27] *Coast Plaza Doctors Hosp. v. Blue Cross of Cal.*, 83 Cal. App. 4th 677, 685 (Cal. Ct. App. 2000) (collecting cases).

United States Supreme Court's reasoning that "where the dispute is over a provision of the expired agreement, the presumptions favoring arbitrability must be negated expressly or by clear implication."[28]

17. Consistent with these precepts, courts have enforced arbitration provisions of terminated agreements even though the terminated agreement's survival clause omits reference to the arbitration provision.[29]

18. In *Brachfeld*, the United States District Court for the Central District of California compelled arbitration under a terminated agreement even though the arbitration clause was omitted from the survival clause that included other provisions.[30] In reaching this conclusion, *Brachfeld* favorably cited the Sixth Circuit's decision in *Huffman*, which is particularly instructive here.

19. In *Huffman*, the party seeking to avoid arbitration argued that omitting reference to an arbitration provision in the survival clause "is tantamount to a clear implication that the parties did not intend the arbitration clause to have post-

---

[28] *Nolde Bros., Inc. v. Local No. 358, Bakery & Confectionery Workers Union*, 430 U.S. 243, 253 (1977); *see also Ajida Techs., Inc. v. Roos Instruments, Inc.*, 104 Cal. Rptr. 2d 686, 695 (Cal. Ct. App. 2001) ("As the high court said, 'in the absence of some contrary indication, there are strong reasons to conclude that the parties did not intend their arbitration duties to terminate automatically with the contract.'" (quoting *Nolde Bros.*, 430 U.S. at 253; *Litton Fin. Printing Div., Litton Bus. Sys., Inc. v. NLRB*, 501 U.S. 190, 204 (1991))).

[29] *Brachfeld v. Hopkins*, 2017 WL 10436075, at *4 (C.D. Cal. Dec. 11, 2017); *Huffman v. Hilltop Cos., LLC*, 747 F.3d 391, 396 (6th Cir. 2014)).

[30] *Brachfeld*, 2017 WL 10436075, at *4.

10

expiration effect in light of the doctrine of *expressio unius*."[31]   In response, the proponent of arbitration pointed to other provisions in the agreement, which on their face survived any termination of the agreement, as evidence that the survival clause was not intended to be exhaustive.  Based on this reasoning, the court found that it was at least ambiguous whether the survival clause was intended to be exhaustive.[32] The court further held that the "[t]he strong presumption in favor of arbitration" compelled resolving any ambiguity in favor of arbitration.[33]

20.    In reaching this conclusion, the *Huffman* court reasoned:

> [T]he need for an arbitration provision to have post-expiration effect is intuitive, because if "the duty to arbitrate automatically terminated upon expiration of the contract, a party could avoid his contractual duty to arbitrate by simply waiting until the day after the contract expired to bring an action regarding a dispute that arose while the contract was in effect."[34]

21.    The Agreement in this case suffers from the same ambiguities as the agreement in *Huffman*.  In this case, the survival clause in the termination provision is not the only clause that provides for the survival of terms of the Agreement. Section 11.1, for example, separately requires that the confidentiality provisions

---

[31] *Huffman*, 747 F.3d at 396.

[32] *Id.* at 397–98 (noting that a "clear implication" of the parties' intent to omit the arbitration clause from survival would be "if the survival clause listed twenty-three of the agreement's twenty-four clauses—all but the arbitration clause").

[33] *Id.* at 396.

[34] *Id.* at 395 (quoting *Zucker v. After Six, Inc.*, 174 F. App'x 944, 947–48 (6th Cir. 2006)).

11

survive termination for two years.  Accordingly, it is at least ambiguous whether the survival clause was intended to be exhaustive.  As in *Huffman*, therefore, Defendant's *expressio unius* argument falters to the strong presumption in favor of arbitration.  Defendant's argument does not support dismissal of the Complaint.

22.    For the foregoing reasons, Defendant's motion to dismiss is DENIED. IT IS SO ORDERED.

*/s/ Kathaleen St. Jude McCormick*
Vice Chancellor Kathaleen St. Jude McCormick
Dated: December 30, 2019