[No. 6609.]

## FLOYD ET AL. *v.* BLANDING ET AL.

CONSTITUTIONAL LAW—CONTRACT.—A State can no more impair the obligation of a contract made by it with an individual, than if the contract were between two citizens ; but a party, asserting the unconstitutionality of an act on this ground, must make out a clear case, free from all reasonable ambiguity.

SAME.—*Held,* accordingly, that the 4th section of the Act of March 26th, 1851, (Stats. 1851, p. 307) commonly known as the Water Lot Act, did not constitute a contract between the State and the grantees under the act.

APPEAL from a judgment in favor of plaintiffs in the Fourth District Court, City and County of San Francisco. MORRISON, J.

The action was brought to enjoin the defendants, who constitute the Board of State Harbor Commissioners, from building a sea-wall in front of plaintiffs' lot. The other facts are stated in the opinion.

*Lamar,* and *Fox & Kellogg,* for Appellants.

Public grants are strictly construed, and nothing passes to the grantee by implication. (*Stourbridge Canal Co.* v. *Wheeler,* citing Dwarris on Stats. 650 ; *Bartram* v. *Central Turnpike Co.* 25 Cal. 283 ; Cooley on Const. Lim. 236, 494 ; *Butler* v. *N. Y. and New Haven R. R. Co.* 21 Conn. 294 ; *Penn. R. R. Co.* v. *Canal Comrs.* 2 Penn. Stat. 21.

The power and duty to improve the harbors and to regulate commerce within the State is a sovereign power and duty, of which the Legislature cannot deprive itself by contract. (*Toledo Bank* v. *Bond,* 1 Ohio Stats. 622 ; *Rundle* v. *Del. etc.*

*Canal Co.* 14 How. 80; *Christ Church* v. *Phila.* 34 How. 300; *Dartmouth College* v. *Woodward*, 4 Wheat. 629.; Potter's Dwarris on Stats. 458, 455; Cooley on Const. Lim. 280; *Thorpe* v. *S. R. & B. R. R. Co.* 28 Vt. 149; *Brick Pres. Church* v. *Mayor etc. N. Y.* 5 Cow. 538; *Green* v. *Swift*, 47 Cal. 536.)

Remote and consequential damage arising from a public improvement is one to which individuals must submit, as the price of the social compact; and, in the eye of the law, the injury is *damnum absque injuria*. (*Lansing* v. *Smith*, 8 Cowen, 146; S. C. 4 Wend. 1; *North Trans. Co.* v. *Chicago*, U. S. Reporter, March 3rd, 1879, p. 385.)

The unreported case of *Reese* v. *Hathaway*, (No. 3093) decided October 26th, 1877, is conclusive of this case.

*Pope & Boyd*, for Respondents.

Section 4, of the Water Lot Act, provides that the line described in the first section shall be and remain a permanent water-front of the city. This provision was a contract between the State and its grantees under that act. (*Fletcher* v. *Peck*, 6 Cranch, 87; *Dartmouth College Case*, 4 Wheat. 518; *Green* v. *Biddle*, 8 Id. 1; *New Jersey* v. *Wilson*, 7 Cranch, 164, *State Bank of Ohio* v. *Knoop*, 16 How. 369; *Dodge* v. *Woolsey*, 18 How. 331; *McGee* v. *Mathir*, 4 Wall. 143; *Wilm. R. R.* v. *Reid*, 13 Wall. 264; *Bridge Proprietors* v. *Hoboken Co.* 1 Wall. 116; *Binghampton Bridge*, 3 Wall. 51; *Boston & L. R. R. Co.* v. *Salem & L. R. R.* 2 Gray, 1; *Van Hoffman* v. *City of Quincy*, 4 Wall. 535; *Smith* v. *City of Appleton*, 19 Wis. 468; *Dammon* v. *Comrs. of School and Lieu Lands*, 4 Wis. 414.

By the COURT:

The grave question presented on this appeal, is whether, on the facts stated in the complaint, the Act of March 26th, 1851, (commonly known as the Water Lot Act, Statutes 1851, p. 307) and particularly the fourth section thereof, constituted a valid contract between the State on the one side, and the grantors and predecessors in interest of the plaintiffs on the other side, which,

in its legal effect, established the water front of the City of San Francisco, as defined by the first section of the act, so irrevocably that it can never be changed or enlarged to the prejudice of the plaintiffs' beach and water lot and the diminution of its value, without the consent of the plaintiffs or their successors in interest? If the affirmative of this proposition be maintained, the result will be that the water-front line, as defined by the first section of the act, can never be modified or enlarged to the prejudice of the plaintiffs or their successors in interest, or of any other holder of a beach or water lot similarly situated, without their consent, however urgently the necessities of commerce and the interests of the people may demand the change. But while this would afford no justification for disregarding any rights of the plaintiffs which are protected by the Constitution and laws, it furnishes a sufficient ground why all reasonable doubts as to those rights should be resolved in favor of the public. In other words, to entitle the plaintiffs to the relief demanded, it is incumbent on them to make out a clear case, free from all reasonable ambiguity, and bringing them fully and fairly within the protection of that clause of the Federal Constitution which prohibits a State from passing laws impairing the obligations of contracts. The argument for the plaintiffs is, that at the time of the passage of the Act of March 26th, 1851, all the beach and water lots therein described were the property of the State, and it was a notorious fact, well known to the Legislature, that the greater portion, and perhaps all those lots, were covered with the waters of the bay, and could not be made available for any useful purpose, except by a great outlay of money in reclaiming them from inundation; that with this knowledge, and presumably for the very purpose of encouraging and promoting the reclamation of this large body of submerged land, lying in front of the principal seaport city of the State, and thus rendering it available for commercial purposes, the State, by the Act of 1851, granted to the city the use and occupation of all these lots, with certain exceptions, for the term of ninety-nine years; and as to such of them as had been previously granted by the municipal authorities to private persons

in the manner specified in the second section of the act, the State relinquished to the grantees or their successors in interest the use and occupation of the lots so granted for the term of ninety-nine years. The lots of the plaintiffs come within the latter category, and at the time of the passage of the act were covered with water, and have been reclaimed at great expense. They are separated on two sides from the water front only by the intervening streets, on which vessels of all sizes receive and discharge their cargoes; and the plaintiffs have erected on the lots, at a great expense, a large warehouse for the storage of merchandise, from which they have derived and are yet receiving large profits. The defendants, composing the Board of State Harbor Commissioners, in pursuance of subsequent acts of the Legislature, are about to construct a sea-wall in front of plaintiffs' lots, which will increase considerably the distance between the warehouse and the new water front, and will materially diminish the value of the property and the profits derived from its use. The fourth and sixth sections of the Act of 1851 are in the following words:

"Section 4. That the boundary line described in section first of this act shall be and remain a permanent water front of said city; the authorities of which shall keep clear, and free from all obstructions whatsoever, the space beyond said line, to the distance of five hundred yards therefrom."

"Section 6. Nothing in this act shall be construed as a surrender by the State of its right to regulate the construction of wharves or other improvements, so that they shall not interfere with the shipping and commercial interests of the bay and harbor of San Francisco."

It is contended for the plaintiffs that the fourth section is in substance and effect a solemn compact on the part of the State with the persons to whom the lots were granted and their successors in interest; that the water-front line defined by the first section should never be modified or enlarged to their prejudice without their consent; and that, if any consideration was necessary to support it, it was a sufficient consideration that on the faith of it the grantees were induced to expend their money in

reclaiming and improving the property, as it was intended and expected they would, in order to render it available for any useful purpose. On the other hand, the defendants insist: *First*, that the fourth section contains none of the elements of a contract, and was only the exercise of legislative authority, designed to subserve the interests of commerce in the chief seaport city of the State; that the Legislature then supposed that the commercial interests and the convenience of shipping would be best promoted by fixing this line as the permanent water front, and keeping the space in front of it free from obstructions; but that there is nothing on the face of the statute, or in the surrounding circumstances, to warrant the inference that the Legislature supposed it was entering into a compact with the grantees, fixing this irrevocably as the water front through all time to come. *Second*, that the sixth section is a distinct declaration that the Legislature did not so understand the fourth section; and in reserving in express terms the right to regulate the construction of wharves and other improvements, so that they shall not interfere with the shipping and commercial interests of the bay and harbor, there resulted by necessary implication the correlative right to construct such wharves and other improvements as in the judgment of the Legislature would best promote the convenience of shipping and the interests of commerce. *Third*, that the fixing of the water-front line was an exercise of the police power of the State, and the Legislature had no power to bind its successors in such matters.

We have thus briefly, and, we believe, fairly, stated the positions of the respective counsel, and now proceed to examine them.

We may observe, *in limine*, that it is now too well settled to admit of debate, that a State may enter into a valid contract with a private person, and that it can no more impair the obligation of the contract by subsequent legislation than if the contract was between two or more citizens. Nor is it necessary, in order to support such a contract, that there should be a consideration moving from the other party to the State. It will be sufficient if, on the faith of the contract, the other party

has been induced to invest his money or to employ his time and labor in furtherance of the enterprise which is the subject-matter of the contract. But in all this class of cases, the first point to be established is, of course, the existence of the contract itself. In most of the cases to which we have been referred by counsel, there was little or no difficulty on this point. In *Fletcher v. Peck*, 6 Cranch, 87, certain lands had been granted by the State of Georgia to private persons, and the Legislature, by a subsequent statute, attempted to annul the grant. The Court held the grant to be an executed contract, and within the protection of the Federal Constitution. In the *State of New Jersey* v. *Wilson*, 7 Cranch, 164, the Legislature passed an act authorizing a purchase of lands for certain Indians, in consideration of the relinquishment by the Indians of certain other lands. The act contained a provision that the lands so purchased should be exempt from taxation. A subsequent act attempted to repeal the statute exempting the lands from taxation, and the Court held that the first act created a contract, which could not be annulled by the subsequent act. The case of the *State Bank of Ohio* v. *Knoop*, 16 How. 369, involved a similar principle. In *McGee* v. *Mathis*, 4 Wall. 143, the State of Arkansas passed an act for the sale of certain swamp lands, and, in order to encourage their reclamation, provided that they should be exempt from taxation for a certain term. The Court held this to be a contract that the lands should not be taxed during the term. In *Wilmington R. R.* v. *Reid*, 13 Wall. 264, the Legislature, in chartering the railroad company, authorized it to purchase property for the use of the road, and provided that the land should be free from taxation. Under a subsequent act, a tax was levied upon the franchise of the company, and the Court held the first act to be a contract exempting the franchise from taxation. The other cases cited by counsel all rest upon analogous provisions, and in none of them was there a reasonable doubt as to the existence of the contract.

But in the case before us there was certainly no express contract with the grantees of the beach and water lots; and if one

exists, it can only be inferred from the fourth section of the statute, construed in the light of the surrounding circumstances. It is to be observed, that the statute imposed no duties or burdens upon the grantees. It was not incumbent on them to reclaim or improve their lots. They incurred no penalties if they failed to do it, and nothing was promised them if they did, unless a promise is to be inferred from the fourth section, to the effect that if they reclaimed or improved them the water front should not be extended to their prejudice. As we have already seen, it is incumbent on the plaintiffs to establish the contract clearly; not by vague conjectures or plausible presumptions merely, but in such manner as to be entirely free from ambiguity. We think they have not only failed to establish it in this method, but that all the presumptions are against them. As we construe the fourth section of the act, it was not addressed to the grantees of beach and water lots, nor intended in any degree to influence their conduct; but was simply a legislative enactment to the effect that, in the judgment of the Legislature, it was not expedient in the interest of commerce and for the convenience of shipping that the water front should extend beyond the line defined by the first section; and to prevent any misconstruction on this point, the Legislature by the sixth section expressly repelled any presumption that they had abdicated their right to regulate the construction of wharves and "other improvements" in the interest of commerce outside of that line.

Judgment reversed and cause remanded, with an order to the Court below to sustain the demurrer to the complaint. Remittitur forthwith.


Neither WALLACE, C. J., nor McKINSTRY, J., expressed any opinion in this case.