[No. C067709. Third Dist. Nov. 2, 2012.]

INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL 1245, Plaintiff and Appellant, v. CITY OF REDDING, Defendant and Respondent.

COUNSEL

Leonard Carder, Matthew D. Ross and Arthur Liou for Plaintiff and Appellant.

Renne Sloan Holtzman Sakai, Timothy G. Yeung and Steve Cikes for Defendant and Respondent.

---

OPINION

**NICHOLSON, Acting P. J.**—Local 1245 of the International Brotherhood of Electrical Workers (IBEW) filed a petition for writ of mandate after the City of Redding (City) unilaterally retracted its promise to pay 50 percent of City employees' medical insurance premiums after retirement. The City demurred, and the superior court sustained the demurrer without leave to amend and dismissed IBEW's petition, deciding that (1) the right of active employees to receive future medical insurance benefits cannot be vested because it is subject to the collective bargaining process and (2) the memorandum of understanding (MOU) between the parties cannot be deemed to provide vested rights because the MOU remains in force only until its expiration.

██ After IBEW appealed the superior court's dismissal of its petition, the California Supreme Court filed its opinion in *Retired Employees Assn. of Orange County, Inc. v. County of Orange* (2011) 52 Cal.4th 1171 [134 Cal.Rptr.3d 779, 266 P.3d 287] (*Retired Employees*). In that case, the Supreme Court held that "under California law, a vested right to health benefits for retired county employees can be implied under certain circumstances from a county ordinance or resolution." (*Id.* at p. 1194.)

Applying *Retired Employees*, we conclude the trial court erred by sustaining the demurrer because the petition alleged that the MOU's ratified by the city council promised active employees that the City would pay 50 percent of their future retiree medical insurance premiums. We therefore reverse and remand for further proceedings.

BACKGROUND

In a first amended petition, IBEW alleged: "Since 1979, in its memorandum of understanding with [IBEW] and in other communications with Local 1245 and City employees, the City has promised to all Electric Department employees represented by Local 1245 that the City would pay 50% of the group medical insurance premium for retirees and their dependents. This obligation, communicated repeatedly by the City, was used as an inducement

to recruit and retain employees as well as to convince them to accept lower wages in return for the benefit."

The petition continued: "Nevertheless, in March 2010, [the City] unilaterally cut the retiree health benefit to provide a subsidy of only 2% per year of service, up to a maximum of 50%. By cutting employees' retiree health benefits, the City violated its promise to maintain the benefit unless the parties mutually agreed otherwise. This impaired the City's clearly established contractual obligations, in violation of the California and federal constitutions."

More specifically, the petition alleged that, in 1978, the City agreed to participate in paying employees' future health insurance premiums. Since 1979, the MOU's between IBEW and the City contained the following provision (or one substantially the same in form): "The City will pay fifty percent (50%) of the group medical insurance program premium for each retiree and dependents, if any, presently enrolled and for each retiree in the future who goes directly from active status to retirement and continues the group medical insurance without a break in coverage. For those employees who retire on or after July 1, 2000, dental and vision insurance coverage may be continued as a package under the fifty percent (50%) cost sharing basis provided the retiree also maintains the medical coverage." (Italics omitted.)

The MOU's also provided that they " 'will remain in full force and effect, unless modified by mutual agreement.' " (Italics omitted.) And the promises made in the MOU's were approved by the city council.

City employees with at least five years of service may retire after age 55.

The City also made promises to employees, independent of the MOU's, to pay 50 percent of future retiree medical insurance premiums, through job postings, as well as internal documents and communications. The City used these promises to recruit employees and induce current employees to remain employed by the City and to accept lower wages.

In 2008, the City and IBEW started negotiations for a new collective bargaining agreement. The parties initially agreed that the City's payment of 50 percent of future retirees' medical insurance premiums was a vested benefit. In 2010, however, the City changed its position and proposed to pay 2 percent per year of service, up to 50 percent, of retirees' medical insurance premiums. Since the parties were unable to reach an agreement, the City unilaterally imposed its new proposal.

As noted, the superior court sustained the City's demurrer to the petition without leave to amend and dismissed the action.

## DISCUSSION

On appeal after the sustaining of a demurrer, we review the petition de novo for facts sufficient to state a cause of action under any legal theory. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].)

*Retired Employees* is the centerpiece for our analysis of promises to municipal employees in MOU's. Therefore, we start with a summary of that case.

The Supreme Court decided *Retired Employees* in response to a certified question from the Ninth Circuit of the United States Court of Appeals. The question was " '[w]hether, as a matter of California law, a California county and its employees can form an implied contract that confers vested rights to health benefits on retired county employees.' " (*Retired Employees, supra*, 52 Cal.4th at p. 1176.) The Supreme Court responded that "a county may be bound by an implied contract under California law if there is no legislative prohibition against such arrangements, such as a statute or ordinance. [Citation.]" (*Ibid.*)

In *Retired Employees*, the county offered group medical insurance to both active employees and retirees. Both active employees and retirees paid part of the premium. To reduce the premiums for the retirees, the county, in 1985, "began combining active and retired employees into a single unified pool for purposes of calculating health insurance premiums." (*Retired Employees, supra*, 52 Cal.4th at p. 1177.) In 2007, the county passed a resolution splitting active employees and retirees into separate pools, thus increasing premiums for retirees. (*Ibid.*)

The retired employees filed a federal action seeking an injunction prohibiting the splitting of the pool. They conceded that there was no express provision in the MOU's for unified pooling, but the "County's long-standing and consistent practice of pooling active and retired employees, along with County's representations to employees regarding a unified pool, created an *implied* contractual right to a continuation of the single unified pool for [retired] employees . . . ." (*Retired Employees, supra*, 52 Cal.4th at pp. 1177–1178, original italics.)

■ The California Supreme Court noted that contracts between municipalities and their employees are interpreted by the same rules as private contracts unless the Civil Code provides otherwise. And municipalities may be bound by implied contracts, as long as the implied contract is not prohibited by statute or ordinance. (*Retired Employees, supra*, 52 Cal.4th at pp. 1178–1179, 1183.)

"[L]egislation in California may be said to create contractual rights when the statutory language or circumstances accompanying its passage 'clearly ". . . evince a legislative intent to create private rights of a contractual nature enforceable against the [governmental body]." ' [Citation.] Although the intent to make a contract must be clear, our case law does not inexorably require that the intent be express. [Citation.] A contractual right can be implied from legislation in appropriate circumstances. [Citation.] Where, for example, the legislation is itself the ratification or approval of a contract, the intent to make a contract is clearly shown." (*Retired Employees, supra,* 52 Cal.4th at p. 1187.)

Implied terms of an agreement may also create vested rights for the employees. "Vesting remains a matter of the parties' intent." (*Retired Employees, supra,* 52 Cal.4th at p. 1189.) However, "implied rights to vested benefits should not be inferred without a clear basis in the contract or convincing extrinsic evidence." (*Id.* at p. 1191.)

### A. Adequacy of IBEW's Pleading

Applying *Retired Employees*, we conclude that the superior court's reasons for sustaining the demurrer are not valid. IBEW adequately pleaded valid agreements by the City to provide *future* retirement benefits—50 percent of medical insurance premiums—to active employees. IBEW also pleaded that those agreements were ratified by the city council, thus satisfying the requirement that the benefits be given by legislation. (See Gov. Code, § 3505.1 [MOU presented to city council].)

The fact that the future right of active employees to receive retiree medical insurance benefits remained subject to the collective bargaining process does not necessarily mean that prior MOU's, ratified by the city council, did not already create a contractual obligation that survived the expiration of the MOU's.

■ When the parties so intend, an MOU between the parties may provide vested rights beyond the expiration of the MOU. "[C]ontractual obligations will cease, in the ordinary course, upon termination of the bargaining agreement. Exceptions are determined by contract interpretation. Rights which accrued or vested under the agreement will, as a general rule, survive termination of the agreement." (*Litton Financial Printing Div. v. NLRB* (1991) 501 U.S. 190, 207 [115 L.Ed.2d 177, 198, 111 S.Ct. 2215].)

Since "[v]esting remains a matter of the parties' intent," and the petition alleged language in the MOU's promising payment of 50 percent of the medical insurance premiums "for each retiree in the future," the petition

adequately alleged a mutual intention to extend future retirement benefits to active employees. (See *Retired Employees, supra*, 52 Cal.4th at p. 1189.) This was a sufficiently clear showing, for pleading purposes, that legislation—that is, the ratification of the MOU's by the city council—was intended to create an obligation that survived the expiration of the MOU's. (*Id.* at pp. 1188–1189.)

## B. *The City's Arguments*

In the City's respondent's brief, filed soon after the Supreme Court issued its decision in *Retired Employees*, the City made three arguments in support of the superior court's sustaining of the demurrer: (1) public employees cannot have a vested right to lifetime retiree health benefits absent an *express* legislative authorization, (2) the language in the MOU's did not confer a vested right to lifetime retiree benefits, and (3) extrinsic evidence of the City's promises to provide lifetime retiree health benefits was insufficient to create an obligation on the part of the City. None of these arguments supports the dismissal of the petition.

## 1. *Express Legislative Authorization*

Citing such broad public policy maxims as (1) a public agency possesses authority to set employee compensation and (2) a governing body must have power to balance its budget, the City argues that the city council did not expressly authorize a vested right on the part of then active employees to a future retiree medical insurance premium benefit. We disagree.

Put simply, the MOU's at issue here promised to "pay fifty percent (50%) of the group medical insurance program premium for each retiree and dependents, if any, presently enrolled *and for each retiree in the future* . . . ."[1] (Italics added.) This provision provided not only for "each retiree" during the term of the MOU but also for "future" retirees. "[P]resently enrolled" could refer only to those retirees enrolled during the term of the MOU. Therefore, the most reasonable interpretation of "for each retiree in the future" is that the benefit was promised to active employees when they retired, even beyond the term of the MOU. If the parties had intended the retiree medical insurance premium benefit to apply only until the MOU expired, "in the future" was mere surplusage. (*National City Police Officers' Assn. v. City of National City* (2001) 87 Cal.App.4th 1274, 1279 [105 Cal.Rptr.2d 237] [courts avoid interpretation rendering part of the instrument surplusage].) The City has failed to make any persuasive argument against applying this most reasonable interpretation.

---

[1] The remainder of the sentence limiting retiree medical insurance premium benefits to those "who go[] directly from active status to retirement and continue[] the group medical insurance without a break in coverage" is not at issue here.

With this express language, the MOU's were ratified by the city council. Consequently, then active employees' vested right to future retiree medical insurance premium benefits was legislatively authorized, expressly.

Having found that the language of the MOU can be reasonably interpreted to provide future retiree medical insurance benefits expressly, we need not consider whether, under *Retired Employees*, there was an implied contract. Nonetheless, we apply the holding of *Retired Employees* that contracts between municipal governments and their employees are to be interpreted by the same rules as private contracts unless the Civil Code provides otherwise. (*Retired Employees, supra*, 52 Cal.4th at pp. 1178–1179, 1183.)

We note that the City offers no interpretation of the actual language—"each retiree and dependents, if any, presently enrolled *and for each retiree in the future*"—that conflicts with the interpretation we find most reasonable. (Italics added.) We also note that the City offers no extrinsic evidence of the dealings between the parties that the parties did not intend the interpretation we have given the language.

Under general principles of contract interpretation, the MOU's between the City and IBEW expressly provided that the City would pay 50 percent of future retirees' medical insurance premiums.

### 2. *Language of the MOU's*

While the City recognizes that future retirement benefits of active employees is a proper subject for collective bargaining, it claims that any MOU terms on that subject necessarily expire upon the expiration of the MOU because the Government Code allows a municipality to impose the last, best, and final offer after impasse. (See Gov. Code, § 3505.4.) This claim contradicts the Supreme Court's holding in *Retired Employees*, which states that the MOU may create vested rights, if the parties so intended. Here, the language of the MOU in which the City promised to pay 50 percent of medical insurance premiums "for each retiree in the future" reasonably leads to the conclusion that the parties intended to provide a future benefit to active employees, not just during the term of the MOU.

Despite this language in the MOU, the City asserts: "[T]he MOU does not contain clear and unmistakable language guaranteeing employees that the City will subsidize their future retiree health insurance premiums at a certain level in perpetuity—irrespective of whether the City could actually afford such a benefit. [Citations.]" There are two problems with this assertion. First, it completely ignores the actual language of the MOU stating that the provision applied to "each retiree in the future." And second, the City

provides no authority for the relevance of whether the City, in the future, can afford to keep such a promise. (See *Orange County Employees Assn. v. County of Orange* (1991) 234 Cal.App.3d 833, 844, fn. 10 [285 Cal.Rptr. 799] [financial distress caused to municipality by a statute a matter to address to the Legislature, not the courts].)

Again ignoring the language in the MOU's, the City argues: "[N]othing in the parties' MOU suggests that they intended the retiree health subsidy would continue in 'perpetuity' or, for that matter, following the agreement's expiration." However, the City does not explain what "for each retiree in the future" means if not to commit the City to paying 50 percent of medical insurance premiums for "each retiree in the future."

Finally, the City contends that retirement benefits under an MOU do not vest until the employee retires. Therefore, argues the City, the right to have the City pay 50 percent of the retiree's medical insurance premiums did not vest unless the employee retired before the MOU expired. To support this contention, the City cites to cases that interpreted different language in the MOU's at issue in those cases. (See, e.g., *Winnett v. Caterpillar, Inc.* (6th Cir. 2009) 553 F.3d 1000, 1009–1011 [finding no vesting in prior collective bargaining agreement that provided for payment of medical insurance premiums but had no language extending agreement beyond term of collective bargaining agreement].)

This contention is defeated by the language of the MOU's at issue here. As the *Retired Employees* court held, vesting is a matter of the parties' intent. (*Retired Employees, supra,* 52 Cal.4th at p. 1189.) In the MOU's at issue here, the City promised to pay 50 percent of the medical insurance premiums of not only the "retiree" but also "for each retiree in the future." Regardless of what different language in other MOU's in other cases may have been interpreted to mean, the most reasonable interpretation of this language is that the City committed itself to pay 50 percent of medical insurance premiums "in the future" on behalf of then active employees when they retired.

### 3. *Extrinsic Evidence of Promises*

Having concluded that the terms of the MOU's, as pleaded in the petition, adequately supported a contractual obligation on the part of the City to provide the future retirement medical insurance benefit to active employees, we need not consider whether other promises made to the employees by the City created such an obligation.

### DISPOSITION

The judgment is reversed and the action is remanded with instructions to the superior court to vacate the order sustaining the demurrer and enter a new

order overruling the demurrer. IBEW is awarded its costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1).)

Butz, J., and Murray, J., concurred.

A petition for a rehearing was denied November 30, 2012, and respondent's petition for review by the Supreme Court was denied January 16, 2013, S207278.