Filed 3/9/15  South Pasadena Police Officers' Assn. v. City of South Pasadena CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| SOUTH PASADENA POLICE OFFICERS' ASSOCIATION et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> CITY OF SOUTH PASADENA, <br><br> Defendant and Respondent. | B254176 <br><br> (Los Angeles County <br> Super. Ct. No. BS141204) |

APPEAL from a judgment of the Superior Court of Los Angeles County. Robert H. O'Brien, Judge.  Affirmed.

Law Office of Michael A. Morguess, Michael A. Morguess for Plaintiffs and Appellants.

Liebert Cassidy Whitmore, Steven M. Berliner, Frances E. Rogers for Defendant and Respondent.

_____

Three municipal employee associations sued the City of South Pasadena to enforce expired agreements obligating the city to pay 100 percent of retired employee health insurance premiums. The associations contend that the city's decision to reduce its contributions, after the agreements expired, violates the federal and state constitutional contract clause. The trial court found no evidence that health care benefits are vested in perpetuity, either expressly or by implication. We affirm.

## FACTS

Appellants are the South Pasadena Police Officers' Association, the South Pasadena Firefighters' Association, and the South Pasadena Public Service Employees' Association. They represent most employees of the City of South Pasadena (the City). Until 2011, the relationships between appellants and the City were governed by Memoranda of Understanding (MOU's). Since 1972, the City has participated in a statutory medical benefits scheme known as the Public Employees' Medical and Hospital Care Act (PEMHCA). (Gov. Code, § 22750 et seq.)

Before 2000, the MOU's did not address health insurance benefits for retired employees. From 2000 to 2008, the MOU's for firefighters and public service employees stated that the City shall continue to pay 100 percent of the premium for retirees. The MOU's for police officers had no provision for retiree medical insurance from 2000 to 2008.

Appellants entered MOU's with the City effective July 1, 2008 to June 30, 2011, which were adopted by municipal resolutions. The MOU's address medical coverage for retired employees: "As regards employees hired prior to the date of Council adoption of this 2008-2011 Memorandum of Understanding, the City shall pay 100% of the premium for all retired employees. Unit members hired on or after the date of City Council adoption of this Memorandum of Understanding shall upon retirement be eligible for City funding of medical insurance premium in the same manner as are previously hired employees, if the retirement follows at least seven (7) consecutive and full years of City service, and the individual is in the employ[] of the City at the time of retirement."

2

When appellants and the City failed to agree on new MOU's in 2011, the City passed resolutions modifying its contribution to retiree medical insurance. These read, "[F]ormer and present employees who became/become annuitants prior to July 1, 2012 shall receive City payment of 100% of the medical insurance premium for the retired employee only, with said payment not exceeding the premium requirement for insurance programs offered through CalPERS, both prior to and after becoming Medicare eligible. All employees who retire on or after July 1, 2012, shall receive a City retiree medical contribution as prescribed in Government Code § 22892, as that amount may from time to time be adjusted upward and/or downward."

The City adopted "Terms and Conditions of Employment" that reiterate its resolutions. Since July 1, 2012, the City's contribution to medical premiums is an equal amount for both active employees and annuitants under PEMHCA.

Appellants petitioned for a writ of mandate in January 2013. They allege that the City violated the constitutional contract clause by modifying its contributions to retired employee health insurance. The City denied violating state or federal law.

Several City employees were deposed and submitted declarations during the litigation. An administrative secretary of 20 years stated that after she was hired, she learned that employees receive a 100 percent City-paid retirement medical benefit; she relied upon this benefit to stay with the City. No member of her association told her that the City promised to pay their retiree medical for the rest of their lives; rather, "they had an understanding, an expectation that the City was going to take care of them when they retired." No one had to accept lower pay in exchange for the retiree medical benefit. No one at the City ever told her that the retiree medical benefit "would last forever," never change, or was offered as an inducement to work for the City. She retired in 2012, and now receives $625 per month from the City toward her medical insurance. She does not pay any additional money out-of-pocket, so the City covers 100 percent of her retiree medical insurance. The City will cover the cost of her supplemental medical insurance once she reaches age 65 and qualifies for Medicare.

The personal understanding of an eight-year City firefighter was that current employees were entitled to 100 percent coverage of medical premiums for life upon retirement: he relied upon this in maintaining employment and declining offers from other localities that did not have full retirement medical coverage. The first time the City indicated that it could alter this benefit was in 2011, during failed negotiations for a successor MOU. The firefighter could not recall seeing any City fliers or advertisements promising 100 percent retiree medical coverage, nor did anyone from the City ever tell him that this was an inducement to accept City employment. It is his understanding that provisions in a MOU can be negotiated; however, he did not believe that the City could change retirement health benefits without its employees' agreement. A 29-year City police officer recalled a job flyer from the early 1980's saying that the City paid 100 percent of retiree medical premiums, which was reiterated in conversations.

The City manager declared that no City representative promised appellants' representatives that retiree health benefits were guaranteed for life, or that the benefit was not negotiable. During his tenure with the City, which began in 2003, he was unaware of any job flyer or posting indicating that the City would pay medical benefits for life. No employee handbooks or personnel rules make such a promise.

## THE TRIAL COURT'S RULING

The trial court found that City employees who retired before July 2012 are entitled to receive 100 percent of their medical insurance premiums. Employees hired after July 2011 are entitled to a medical insurance contribution of $625. The key issue was benefits for employees hired before July 2011, who did not retire before July 2012. Under the MOU's that expired in June 2011, retirees were entitled to 100 percent insurance. However, the court determined that the MOU's did not create vested rights that survived after the MOU's expired. It wrote, "There is no express language in the clause suggesting that this arrangement for the payment of 100% of medical premiums for retirees is an expectation for employees who retire after the expiration of the [2008-2011] MOU." Further, there was no implied understanding between the parties that the lifetime medical benefit was vested. The City is under no contractual duty to contribute 100

4

percent toward the insurance of employees who retired after July 1, 2012. The court denied the petition and entered judgment in favor of the City.

## DISCUSSION

### 1. Standard of Review

The trial court may compel the performance of an act required by law. (Code Civ. Proc., § 1085.) A petitioner seeking relief must show a ministerial duty on the part of the respondent, and the petitioner's beneficial right to the performance of that duty. (*Kavanaugh v. West Sonoma County Union High School Dist.* (2003) 29 Cal.4th 911, 916.) Appeal lies from the denial of a petition for a writ of mandate. (*MCM Construction, Inc. v. City and County of San Francisco* (1998) 66 Cal.App.4th 359, 367, fn. 3.) "[A]n appellate court defers to a trial court's factual determinations, if supported by substantial evidence." (*Kavanaugh*, at p. 916.) If the decision involves no disputed facts, but only the interpretation of a statute, review is de novo. (*Ibid.*)

### 2. Appellants' Contract Clause Claim

The petition alleges that the City must provide 100 percent coverage of retiree health care under the MOU's, and resolutions passed after expiration of the MOU's impair the City's duty, in violation of the contract clause. (U.S. Const., art. I, § 10; Cal. Const., art. I, § 9 [a "law impairing the obligation of contracts may not be passed"].) The contract clause protects vested retirement rights of public employees from unreasonable impairment. (*Legislature v. Eu* (1991) 54 Cal.3d 492, 528.) The impairment must be "substantial." (*General Motors Corp. v. Romein* (1992) 503 U.S. 181, 186.)

A party asserting violation of the contract clause must show a clear and unambiguous constitutional violation. (*Floyd v. Blanding* (1879) 54 Cal. 41, 43.) The claim is analyzed for (1) the nature and extent of any contractual obligation and (2) the government's power to modify that obligation. (*Board of Administration v. Wilson* (1997) 52 Cal.App.4th 1109, 1131.)

A government entity may contract with its employees. "[L]ocal governments are authorized to meet and confer with their employees' authorized bargaining representative regarding wages, hours, and other terms and conditions of employment, and to enter into

5

and approve written memoranda of understanding to memorialize their agreements. (Gov. Code, §§ 3505, 3505.1.)" (*Retired Employees Assn. of Orange County, Inc. v. County of Orange* (2011) 52 Cal.4th 1171, 1182 (*REAOC*).) MOU's "'are binding and constitutionally protected'" and, so long as they are not contrary to public policy, the employees are entitled to enforce the agreements, which are "'interpreted to execute the mutual intent and purpose of the parties.'" (*Id.* at pp. 1182-1183; *Olson v. Cory* (1980) 27 Cal.3d 532, 538; *Glendale City Employees' Assn., Inc. v. City of Glendale* 1975) 15 Cal.3d 328, 339.)

Future retirement benefits of active workers, including health care premiums, are part of their overall compensation. (*REAOC*, *supra*, 52 Cal.4th at p. 1185; *Chemical Workers v. Pittsburgh Glass* (1971) 404 U.S. 157, 180.) Appellants maintain that their right to 100 percent health care premium coverage in retirement is a vested contractual right. A benefit is "vested" when "the employee acquires an irrevocable interest in the benefit." (*REAOC*, at p. 1189, fn. 3.)

a. *Appellants Have Not Established an Express Right to Perpetual Benefits*

First, appellants argue that the 2008-2011 MOU's *expressly create* a contractual agreement to 100 percent retirement medical benefits funded by the City beyond the effective date of the MOU's. The City does not dispute that MOU's are enforceable contracts. Rather, the City's point is that the MOU's expired in June 2011.

We start with the presumption that a government enactment is not intended to create vested rights. (*REAOC*, *supra*, 52 Cal.4th at p. 1186.) Government employees who claim a vested right bear a "'heavy burden'" to overcome the presumption and demonstrate a legislative intent to create the right. (*Id.* at p. 1190.) The evidence must, in fact, be "'"unmistakable"'" so that "neither the governing body nor the public will be blindsided by unexpected obligations." (*Id.* at pp. 1186, 1189.)

All contracts, public or private, are interpreted by the same rules. (Civ. Code, § 1635.) This includes a ratified MOU reached through collective bargaining between public employee organizations and a public employer. (Gov. Code, § 3500 et seq.; *Pacific Legal Foundation v. Brown* (1981) 29 Cal.3d 168, 201-202; *REAOC*, *supra*, 52

6

Cal.4th at p. 1182.)  No special rules apply "simply because a governmental body is a party to a contract."  (*M.G. Kemper Const. Co. v. City of L.A.* (1951) 37 Cal.2d 696, 704; *REAOC*, *supra*, 52 Cal.4th at p. 1179.)

Under customary rules of interpretation, "[C]ontractual obligations will cease, in the ordinary course, upon termination of the bargaining agreement."  (*Litton Financial Printing Div. v. NLRB* (1991) 501 U.S. 190, 207; *International Brotherhood of Electrical Workers, Local 1245 v. City of Redding* (2012) 210 Cal.App.4th 1114, 1119 (*IBEW*).)  "That principle does not preclude the conclusion that the parties intended to vest lifetime benefits for retirees.  Indeed, . . . 'a collective-bargaining agreement [may] provid[e] in explicit terms that certain benefits continue after the agreement's expiration.'  [Citation].  But when a contract is silent as to the duration of retiree benefits, a court may not infer that the parties intended those benefits to vest for life."  (*M&G Polymers USA, LLC v. Tackett* (2015) 574 U.S. ___; 190 L.Ed.2d 809, 820 (*Tackett*).)

In *Tackett*, an employer entered collective bargaining agreements, promising union employees who reached a certain age and years of service "will receive" a 100 percent company contribution for health care benefits at retirement.  After the agreements expired, the employer announced that retirees had to begin contributing toward the cost of their health insurance.  The retirees sued, alleging that they had a vested right to 100 percent health care benefits that continued beyond the expiration date of the collective bargaining agreements.  (*Tackett*, *supra*, 190 L.Ed.2d. at pp. 814-815.)

Applying principles of traditional contract law, the Supreme Court stated that courts cannot "refuse[ ] to apply general duration clauses to provisions governing retiree benefits" because it conflicts with the principle that a written agreement is presumed to encompass the parties' whole agreement.  (*Tackett*, *supra*, 190 L.Ed.2d at p. 819.)  The court rejected the notion that a retiree medical benefits promise would be "illusory" if the benefits terminated when the bargaining agreement expired.  An employer's agreement to vest benefits in perpetuity cannot be presumed:  there must be clear and express language that benefits will continue after the agreement's expiration.  (*Id.* at pp. 819-820.)

A similar analysis applied in the context of public employees' vested contractual rights to retirement health benefits in *San Bernardino Public Employees Assn. v. City of Fontana* (1998) 67 Cal.App.4th 1215.  The MOU's in that case provided retiree medical and dental insurance benefits.  To prevent the city from reducing the benefits, the employees' union took the position—adopted by the trial court—that their rights were vested.  (*Id.* at pp. 1218-1219.)  The Court of Appeal reversed, finding that the MOU's "were of fixed duration.  Once the MOU's expired under their own terms, the employees had no legitimate expectation that the longevity-based benefits would continue unless they were renegotiated as part of a new bargaining agreement."  (*Id.* at p. 1223.)

In *San Diego Police v. San Diego Retirement System* (9th Cir. 2009) 568 F.3d 725, municipal employees entered a series of MOU's with San Diego governing retiree health benefits, among other things.  The employees argued that changing these benefits impaired vested contractual rights.  The appeals court emphasized that the existence of constitutional rights under the contract clause depends on a legislative intent to create such rights, not on the importance of benefits to the affected individuals.  The "retiree medical benefits here were considered a term of employment that could be negotiated through the collective bargaining process.  As such, they were longevity-based benefits that continued only insofar as they were renegotiated as part of a new agreement and were not protectible contract rights."  (*Id.* at p. 740.  Accord:  *Dailey v. City of San Diego* (2013) 223 Cal.App.4th 237, 250, 254-255 [city can unilaterally impose a cap on retiree health benefits after failing to negotiate a new MOU with an employees' union].)

For a MOU to establish a vested interest in continuing retiree medical insurance benefits, there must be "a mutual intention to extend future retirement benefits to active employees."  (*IBEW*, *supra*, 210 Cal.App.4th at pp. 1119-1120.)  An express promise to pay future medical insurance benefits to retirees after the expiration of a MOU may be found when the government entity contracts to pay insurance premiums "'for each retiree in the future'":  this language "reasonably leads to the conclusion that the parties intended to provide a future benefit to active employees, not just during the term of the MOU."  (*Id* at p. 1121.)  The court in *IBEW* concluded that the city contracted to pay premiums

8

for active employees when they retired "in the future," since the city could not show that the words had a different meaning. (*Id*. at p. 1122.)

Appellants argue that their MOU's contain the same promise as the *IBEW* case. They are mistaken. Language in the MOU's that the City "shall pay 100% of the premium for all retired employees" hired before adoption of the 2008-2011 MOU's is not an express promise to pay for "each retiree in the future," after the MOU's expired. Rather, the MOU's between appellants and the City are similar to the agreements described in *Tackett*, in which the employer agreed that retirees "will receive" a 100 percent contribution from the employer toward the cost of health care, which did not create an express right to benefits in perpetuity. The police officers' MOU expressly reserves the City's "right to change . . . any insurance benefit program involving insurance that now exists or may exist in the future."

The MOU's have a fixed duration showing the parties' intent that the MOU's "shall be in effect on July 1, 2008 and shall continue in full force until June 30, 2011." When the MOU's expired and were not replaced by new agreements, the City was entitled to unilaterally reduce its medical insurance contribution for retirees from 100 percent to the amount it was paying for active employees. (*San Diego Police v. San Diego Retirement System*, *supra*, 568 F.3d at p. 740; *Dailey v. City of San Diego*, *supra*, 223 Cal.App.4th at p. 254.)

> b. *Appellants Have Not Shown an Implied Right to 100 Percent Lifetime Benefits*

Second, appellants contend that there is an *implied right* to 100 percent retiree medical premium payment. They allege that the City promised 100 percent retiree medical coverage to "members and prospective members seeking employment with the City, through verbal statements, job postings, and other correspondence and documents." These promises allegedly induced employees to remain with the City and accept lower pay and benefits.

While the terms of an express contract are stated in words (Civ. Code, § 1620), the terms of an implied contract are manifested by conduct (Civ. Code, § 1621). Implied contracts (or the implied terms of a written contract) still require mutual agreement.

9

(*REAOC*, *supra*, 52 Cal.4th at pp. 1178-1179.) It is possible to imply a vested right to health benefits for retired public employees. (*Id.* at p. 1194.) "[A]s with any contractual obligation that would bind one party for a period extending far beyond the term of the contract of employment, implied rights to vested benefits should not be inferred without a clear basis in the contract or convincing extrinsic evidence." (*Id.* at p. 1191.)

Even long-time government policies regarding retiree health benefits do not necessarily create lifetime rights. "A practice or policy extended over a period of time does not translate into an implied contract right without clear legislative intent to create that right." (*Retired Employees Assn. of Orange County v. County of Orange* (9th Cir. 2014) 742 F.3d 1137, 1142.) A MOU stating that retirees may have certain rights with respect to their health care benefits upon retirement, a county auditor's report characterizing benefits as part of the overall compensation package—and a declaration from a county benefits director that retiree benefits are "lifetime"—are not credible evidence that the government created "anything more than a policy decision for the specific period" of the MOU. (*Ibid.*) Employees cannot successfully argue that "retirement benefits are lifetime benefits" without proof of an agreement to confer lifetime benefits. (*Id.* at p. 1143. Accord: *Sappington v. Orange Unified School Dist.* (2004) 119 Cal.App.4th 949, 954-955 [20-year written policy of providing free medical insurance coverage to retirees does not establish a vested contractual right, even if employees relied on it].)

As noted, "convincing extrinsic evidence" is germane to inferring a vested right to benefits extending beyond the term of a MOU. (*REAOC*, *supra*, 52 Cal.4th at p. 1191.) Extrinsic evidence may include testimony regarding the government body's intent. (*Sonoma County Assoc. of Retired Employees v. Sonoma County* (9th Cir. 2013) 708 F.3d 1109, 1116, fn. 4; *Retired Employees Assoc. of Orange County v. County of Orange*, *supra*, 742 F.3d at p.1143.) There is a "'heavy burden'" on the plaintiff to demonstrate the legislative body's intent to create vested rights. (*REAOC*, at p. 1190, criticizing the "deficient" analysis in *California League of City Employee Associations v. Palos Verdes Library Dist.* (1978) 87 Cal.App.3d 135, 140, for failing to focus on legislative intent.)

10

What is lacking in this case is unmistakable evidence "'"evince[ing] a legislative intent to create [implied] private rights of a contractual nature enforceable against"'" the City.  (*REAOC*, *supra*, 52 Cal.4th at p. 1187.)  Three employees testified about their personal expectations or understanding.  Critically, there is no evidence that the City's intent corresponded with the employees' testimony.  No City administrator was shown to have promised employees 100 percent benefits in perpetuity.  No job flyers, postings or handbooks were presented in evidence guaranteeing the benefits.  (See *Requa v. Regents of University of California* (2012) 213 Cal.App.4th 213, 227-228.)  No "official declaration of policy" shows legislative intent to provide 100 percent postretirement benefits.  (*Thorning v. Hollister School Dist.* (1992) 11 Cal.App.4th 1598, 1607-1609.)

The parties' course of conduct shows a mutual understanding that the benefit was negotiable.  For example, the 2000-2008 MOU's for firefighters and service employees stated that the City "shall continue" to pay 100 percent of retirees' premiums; by contrast, the police officers' MOU contained no such promise.  If the parties intended that this benefit be provided in perpetuity, there would have been no need to expressly agree to continue it.  When the parties renegotiated the health care benefit for the 2008-2011 MOU's, they agreed to institute a requirement that employees serve at least seven years before qualifying.  This demonstrates that the parties treated the benefit as a chip during collective bargaining, not as a vested right.  The City did not commit itself to lifetime benefits merely by agreeing to those benefits in the MOU's or following a longtime practice:  an "assumption" that a benefit will continue does not create an implied agreement.  (*Retired Employees Assn. of Orange County v. County of Orange*, *supra*, 742 F.3d at pp. 1142-1143.)  Appellants' "argument about the general nature of retirement benefits as lifetime benefits is unavailing." (*Id.* at p. 1143.)

Public employee benefits may be modified or reduced under statutory authority. (*Butterworth v. Boyd* (1938) 12 Cal.2d 140, 150.)  As a participant in the PEMHCA, the City may fix the amount of its contribution to health care premiums by resolution, so long as it meets the minimum set by statute.  (Gov. Code, § 22892, subds. (a), (b).)

11

## CONCLUSION

When the parties reached an impasse in negotiating new MOU's, the City could unilaterally implement its last, best and final offer. (Gov. Code, § 3505.7.) No express or implied contract prohibited the City from modifying its contributions to retiree medical insurance premiums. Appellants have not carried their heavy burden of demonstrating a mutual intent to create vested rights to 100 percent medical coverage. The contract clause was not violated and the petition was properly denied.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


BOREN, P.J.

We concur:


ASHMANN-GERST, J.


HOFFSTADT, J.

12