[No. D035158. Fourth Dist., Div. One. Mar. 2, 2001.]

NATIONAL CITY POLICE OFFICERS' ASSOCIATION, Plaintiff and Appellant, v.
CITY OF NATIONAL CITY, Defendant and Respondent.

**COUNSEL**

Law Offices of Everett L. Bobbitt, Everett L. Bobbitt and Bradley M. Fields for Plaintiff and Appellant.

George H. Eiser III, City Attorney, and Rudolf Hradecky, Assistant City Attorney, for Defendant and Respondent.

## OPINION

**BENKE, J.—**

### SUMMARY

Under a memorandum of understanding (MOU) between plaintiff National City Police Officers' Association (the association) and defendant City of National City (the city), each year police officers are permitted to sell back up to 40 hours of unused vacation time. Separate provisions of the MOU require that in addition to their hourly base pay officers receive incentive pay or differential pay when they are engaged in certain activities, have certain skills or have extended of years of service with the city. Under the terms of the MOU these incentives and differentials are payable on a monthly basis. In practice the incentives and differentials are calculated on a biweekly basis for any pay period in which they qualify for the particular pay incentive or differential.

In buying back vacation hours from police officers, the city pays officers only their base hourly pay. The city does not add to the vacation pay any incentive or differential pay to which officers might otherwise be entitled at the time of the buy-back. The association objected to this practice and filed a grievance under terms of the MOU.

A grievance hearing board agreed with the association and ordered the city to include incentives and differentials when buying back vacation pay. However, the board's order was rejected by the city manager.

The association filed a petition for a writ of mandate in which it asked that the trial court order the city to include pay incentives and differentials when calculating the amount of police officers' unused vacation benefits and to compensate those officers who had, during the term of the MOU, sold unused vacation hours to the city. The association also alleged a cause of action for declaratory relief in which it asked that the trial court determine the city had violated the terms of the MOU as well as state and federal wage statutes.

In the trial court the association and the city relied solely upon the face of the MOU; the parties did not introduce any extrinsic evidence in support of their respective interpretations of the agreement. After a hearing on the merits the trial court denied the petition for extraordinary relief. Thereafter the association agreed the trial court could rule on its declaratory relief cause of action based on the documents the parties had submitted with respect to

the writ petition. The trial court did so and denied the association any relief. The trial court entered judgment in favor of the city and the association filed a timely notice of appeal.

DISCUSSION

I

Although not discussed by the parties, we think it is helpful at the outset to recognize the MOU between the city and the association is governed by the Meyers-Milias-Brown Act (Gov. Code, § 3500 et seq.) (MMB). The MMB was enacted because its predecessor, the George Brown Act (Stats. 1961, ch. 1964, § 1, pp. 4141-4142), had proved inadequate in resolving controversies between public employee organizations and the governing bodies of local public agencies. (*Glendale City Employees' Assn., Inc. v. City of Glendale* (1975) 15 Cal.3d 328, 336 [124 Cal.Rptr. 513, 540 P.2d 609].) Under the MMB a local agency must meet and confer with employee representatives, and if an agreement as to the terms and conditions of employment is reached, the agreement must be reduced to writing and presented to the local agency's governing board for adoption. (*Ibid.*)

In rejecting a contention that an MOU adopted by a local governing board could be unilaterally altered by such a board, the Supreme Court in *Glendale City Employees' Assn. v. City of Glendale, supra*, 15 Cal.3d at page 336, stated: "The Legislature designed the act, moreover, for the purpose of resolving labor disputes. [Citation.] But a statute which encouraged the negotiation of agreements, yet permitted the parties to retract their concessions and repudiate their promises whenever they choose, would impede effective bargaining. Any concession by a party from a previously held position would be disastrous to that party if the mutual agreement thereby achieved could be repudiated by the opposing party. Successful bargaining rests upon the sanctity and legal viability of the given word." Thus, "[i]n applying the Meyers-Milias-Brown Act, 'the courts have uniformly held that a memorandum of understanding, once adopted by the governing body of a public agency, becomes a binding agreement.' " (*Id.* at p. 337)

■ Because MOU's are binding agreements between local agencies and designated employee representatives, when the meaning of an MOU is in dispute we apply de novo review, exercising our independent judgment. (*City of El Cajon v. El Cajon Police Officers' Assn.* (1996) 49 Cal.App.4th 64, 70 [56 Cal.Rptr.2d 723].) "It is a judicial function to interpret a contract or written document unless the interpretation turns upon the credibility of extrinsic evidence. [Citation.] Here, where the evidence is undisputed and

the parties draw conflicting inferences, we will independently draw inferences and interpret . . . MOU's. [Citation.] We are guided by the well-settled rules of interpretation of a contract, endeavoring to effectuate the mutual intent of the parties as it existed at the time of contracting insofar as it is ascertainable and lawful. [Citations.]

■ " 'As a rule, the language of an instrument must govern its interpretation if the language is clear and explicit. [Citations.] A court must view the language in light of the instrument as a whole and not use a "disjointed, single-paragraph, strict construction approach' [citation]." If possible, the court should give effect to every provision. [Citations.] An interpretation which renders part of the instrument to be surplusage should be avoided. [Citations.]

" 'When an instrument is susceptible to two interpretations, the court should give the construction that will make the instrument lawful, operative, definite, reasonable and capable of being carried into effect and avoid an interpretation which will make the instrument extraordinary, harsh, unjust, inequitable or which would result in absurdity. [Citations.]' [Citation.]" (*City of El Cajon v. El Cajon Police Officers' Assn., supra,* 49 Cal.App.4th at p. 71.)

■ Once a court has interpreted an MOU, the court may enforce its interpretation by way of traditional mandamus. (See *Glendale City Employees' Assn. v. City of Glendale, supra,* 15 Cal.3d at p. 343; *Santa Clara County Counsel Attys. Assn. v. Woodside* (1994) 7 Cal.4th 525, 541 [28 Cal.Rptr.2d 617, 869 P.2d 1142]; *Reinbold v. City of Santa Monica* (1976) 63 Cal.App.3d 433, 438 [133 Cal.Rptr. 874].) "If there is a clear, present (*and usually ministerial*) duty on the part of respondents, and a clear, present and beneficial right on the petitioner, to the performance of that duty, the writ of mandamus will be granted." (*Reinbold v. City of Santa Monica, supra,* 63 Cal.App.3d at p. 438, italics added). " 'The critical question in determining if an act required by law is ministerial in character is whether it involves the exercise of judgment and discretion.' [Citation.] In the present case, the city entered into an understanding which, we have held, became a valid and binding agreement upon approval by resolution of the council. That agreement, as interpreted by the trial court, is definitive, and admits of no discretion." (*Glendale City Employees' Assn. v. City of Glendale, supra,* 15 Cal.3d at p. 344.)

With respect to the right to mandamus, the city has erroneously suggested the clear and present duty required for mandamus somehow heightens the

association's burden in proving under the terms of the MOU its members are entitled to vacation payments which include pay incentives and differentials. The cases make it clear interpretation of an MOU, like the interpretation of any other written instrument, is a matter for courts to resolve by attempting to discern the parties' intent from the face of the MOU and if need be, any extrinsic evidence offered by the parties. (*City of El Cajon v. El Cajon Police Officers' Assn., supra,* 49 Cal.App.4th at p. 71.) No case has suggested that because an aggrieved employee may have resorted to mandamus, his or her burden with respect to interpretation of an MOU is somehow heavier than had he filed a simple contract action. Rather, once an agency's obligations under an MOU have been determined by a court, the requisite ministerial duty exists and mandamus may be ordered. (*Glendale City Employees' Assn. v. City of Glendale, supra,* 15 Cal.3d at p. 344.)

II

■ Both the association and the city agree that with respect to whether incentive and differential pay must be included in the vacation buy-backs, the language of the MOU is conflicting.

The officer's right to vacation benefits is set forth in article 3 of the MOU. Section 1 of article 3 states: "The purpose of Vacation and Holiday is to provide time for an employee to be away from the work environment and to enable such employee to return to work mentally refreshed. All employees shall be entitled to annual vacation leave *with pay*." (Italics added.) Section 2 of article 3 provides that hours of vacation are earned based on each biweekly pay period an employee works. Section 3 of article 3 limits the number of hours of vacation an employee may accrue.

Evidently because of the limits placed on the amount of vacation that may be accrued, a vacation buy-back benefit is set forth in section 9 of article 3 and states in pertinent part: "Employees in the classifications of Police Officer, Senior Police Officer, and Police Lieutenant on a career basis using a minimum of one-half (1/2) of their annual accrual of vacation during the eligibility period, may convert a minimum of 20 hours and a maximum of 40 hours of their accumulated vacation time to pay in December of each year."[1]

---

[1] With respect to police sergeants, the MOU permits a sell-back of a minimum of 40 hours and a maximum of 80 hours until the department has reached a staffing level of 12 budgeted sergeant's positions. At that point police sergeants will be permitted to sell back a minimum of 20 hours and a maximum of 40 hours.

The provisions describing the various incentives and differentials are set forth in articles 11, 14 and 15 of the MOU. Article 11 provides pay differentials for liason officers, police dog handlers, motorcycle duty and employees with proficiency in a second language. With respect to police officers who meet the requirement of the respective differentials, article 11 states that they "shall receive a pay differential of" a specified amount "per month." Article 14 provides three levels of educational incentive pay. Officers with an associate arts or sciences degree are eligible for "$30 per month compensation"; those with a bachelors degree are eligible for "$60 per month compensation" and officers with a masters degree are eligible for "$100 per month compensation." Article 15 states in pertinent part: "In addition to other compensation paid for the service of employees, pay shall be paid to all officers and employees . . . on the following basis: [¶] (a) After five (5) years of continuous and uninterrupted service the sum of $10.00 per month." The remainder of article 15 provides additional incentive pay after 10, 15, 20 and 25 years of service.

The MOU does not provide any definition of the term "pay." However "compensation" is broadly defined in article 35 as "any salary, wage, fee, allowance or other emolument paid to an employee for performing the duties and exercising the responsibilities of a position." "Salary rate" is more narrowly defined as "a specific dollar amount, expressed as either an annual rate, a monthly rate, a semi-monthly rate, a biweekly rate or an hourly rate, as shown in the Compensation Plan of the City." The parties agree that the salary rate of officers covered by the MOU are set at an hourly rate.

If we find that in using "pay" in article 3 the MOU meant "compensation" as defined in article 35, then the interpretation issue should be resolved in the association's favor. The term "compensation" as defined by the MOU is plainly broad enough to include the incentives and differentials described in articles 11, 14 and 15. On the other hand, if by "pay" the drafters of the MOU meant to only include the specific dollar amount defined as a "salary rate," the city would prevail because the latter term is restricted to the hourly rate which the city uses in buying back vacation time.

We believe "pay" as used in article 3 is more compatible with the broad definition of compensation than the definition of salary rate. First, in providing the vacation benefit the MOU states its purpose is to give employees an opportunity to refresh themselves. Second, and consistent with this policy, the record indicates that when an association member takes time off for vacation—rather than selling back the vacation time—the city pays

the employee the total amount of compensation, including incentive and differential pay, the employee is receiving at the time the vacation time is used. This practice is of course consistent with the purpose of vacation pay because employees are not financially penalized when using vacation pay to obtain the mental refreshment the benefit is designed to provide.

Because vacation pay includes incentives and differentials when an officer uses it, the association argues, with some persuasiveness, that it should be treated in the same fashion when it is sold. That is, just as there should be no penalty for using vacation time, there should be no penalty for selling it. Indeed, both the general provision providing the vacation benefits and the more specific provision permitting the buy-back refer to "pay." Thus on a purely linguistic level, used vacation and sold vacation are treated similarly.

More importantly, there is nothing on the face of the MOU which suggests any substantive reason vacation pay which is sold should be treated differently than vacation pay which is used. Rather, the sell-back provision appears to be related to the limitation on accrued vacation and an effort to mitigate, to some extent, the impact of circumstances which make it difficult for officers to use all of their earned vacation time. This circumstance supports the association's contention that vacation time, whether it is used or sold, should be treated uniformly.

We also note the 40-hour limit on the number of accrued vacation hours an officer may sell each year. Given this limitation on the number of hours that may be sold, there is no basis in the record upon which the city may argue that including in a buy-back the relatively modest pay incentives and differentials will create any undue financial burden. In this regard we reject the city's suggestion that including the pay incentive and differentials in sold vacation somehow will provide police officers with double incentives or differentials. One hour of vacation time, whether it is used or sold, will only permit an officer to collect one hour of pay incentives or differentials.

In sum then we find that under the terms of the MOU the city should have included the pay incentives and differentials in calculating the amount paid in vacation buy-backs.[2]

---

[2]We agree with the city that cases which have found public employers liable for vacation pay (see, e.g., *Suastez v. Plastic Dress-Up Co.* (1982) 31 Cal.3d 774, 776 [183 Cal.Rptr. 846, 647 P.2d 122, 33 A.L.R.4th 254]; *People v. Bishopp* (1976) 56 Cal.App.3d Supp. 8, 10 [128 Cal.Rptr. 923]) are not pertinent here because those cases interpreted particular statutory provisions rather than, as here, terms of an MOU.

## DISPOSITION

The trial court's judgment is reversed and remanded for further proceedings consistent with the views expressed herein. Appellant to recover its costs of appeal.

Kremer, P. J., and O'Rourke, J., concurred.