Filed 9/13/24; Certified for Publication 10/10/24 (order attached)

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| SERGIO RAMIREZ,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>CITY OF INDIO et al.,<br><br>    Defendants and Respondents. | D082997<br><br><br><br>(Super. Ct. No. CVPS2201660) |

APPEAL from a judgment of the Superior Court of Riverside County, Chad W. Firetag, Judge.  Affirmed.

Rain Lucia Stern St. Phalle & Silver and Michael A. Morguess for Plaintiff and Appellant.

Richards, Watson & Gershon, T. Peter Pierce, Jennifer Petrusis and Garen N. Bostanian for Defendants and Respondents.

Former police officer Sergio Ramirez (Ramirez) administratively appealed the decision of the City of Indio Police Department (City) to terminate his employment at the conclusion of the "Appeals Procedure" set forth in the Memorandum of Understanding (MOU) between the City of Indio and the Indio Police Officers' Association.  After a full evidentiary hearing, the arbitrator recommended the reinstatement of Ramirez with full back pay

and benefits, but the City Manager upheld the decision of the Chief of Police (Chief) to terminate Ramirez.

After unsuccessfully petitioning the superior court for writ of mandate (Code Civ. Proc.,[1] §§ 1085, 1094.5), Ramirez appeals to this court and asserts the superior court erroneously interpreted the arbitrator's role in the MOU's administrative appeal procedure. Although he acknowledges that the MOU vests the City Manager with power to revoke the arbitrator's advisory findings and recommendations, Ramirez contends the MOU and due process considerations required the City Manager to defer to the arbitrator's determinations of the weight and credibility of testimony and evidence presented at the hearing.

We reject Ramirez's proposed interpretation of the MOU's administrative appeal procedure and affirm.

I.

RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Ramirez had been employed as a police officer in the City since 2005. In August 2016, Ramirez was charged with rape and two additional counts of sexual assault of V., his 18-year-old niece. The City placed Ramirez on administrative leave, asked him to turn in his work cell phone, and initiated an internal affairs (IA) investigation.

In June 2018, a jury acquitted Ramirez of all criminal charges.

The City's IA investigation resulted in two conflicting reports. In a November 2018 Memorandum to the Chief, the sergeant who conducted the initial investigation concluded Ramirez had violated multiple standards of conduct set forth in the Indio Police Department Policy Manual, including

---

[1]     All statutory references are to the Code of Civil Procedure unless otherwise specified.

2

340.5.8(a) (misrepresenting material facts), 340.5.9(h) (dishonest or disgraceful off-duty conduct affecting the officer's relationship with the department), and 340.5.9(m) (conduct reflecting unfavorably on the department). After further investigation, a different sergeant concluded in a March 2019 Memorandum that the previously identified policy violations were "not sustained."

In June 2019, the Chief issued a Notice of Intent to Terminate Ramirez and conducted a pre-disciplinary conference in September, which provided Ramirez an opportunity to orally respond. On October 23, 2019, the Chief issued a Notice of Termination based on Ramirez's violations of the Department's Standards of Conduct, Expectations of Behavior, and Code of Ethics. The Chief explained: "Based on [your] admission that you drove under the influence of alcohol alone I would terminate your employment, but the preponderance of the evidence establishes that you also engaged in dishonest behavior and showed poor judgment that embarrassed the City and the Indio Police Department."

Ramirez administratively appealed the Chief's decision under the MOU's "Appeals Procedure" by requesting an "Evidentiary Appeal to Advisory Arbitration." The mutually agreed upon arbitrator conducted a three-day virtual evidentiary hearing, where the parties presented arguments, testimony and documentary evidence[2] in support of their respective positions.

---

[2] A copy of Ramirez's trial testimony was admitted as an exhibit at the hearing. V. did not testify at the hearing, nor did the parties submit the transcript of her testimony at the criminal trial.

*Arbitrator's findings*

The arbitrator issued his written statement of advisory findings and recommendations on September 23, 2021, recommending the Chief's decision to terminate Ramirez "be overturned and that Ramirez be reinstated and made whole with full back pay and benefits." The arbitrator concluded Ramirez "failed to prove that his *Skelly*[3] rights were violated," and the City failed to carry its burden to establish "three claims: that Ramirez drove under the influence of alcohol, that Ramirez reset his Department-issued cell phone with an intent to destroy evidence and then lied about his actions, and that Ramirez made inconsistent statements during his IA interviews and at trial with an intent to lie or misrepresent his actions."

In his enumerated "Findings of Fact," the arbitrator specifically found the City failed to prove Ramirez drove under the influence of alcohol "as alleged in the Notice of Termination"; Ramirez presented "credible and uncontradicted evidence" that police officers turning in their department-issued cell phones were routinely allowed and routinely instructed to reset their phones, and "[t]he fact that Ramirez was under investigation at the time does not support an inference of an attempt to interfere with any investigation sufficient to sustain the Department's burden of proof on that issue"; and Ramirez "credibly testified" that the differences between his trial testimony and his IA interviews were "the product of the forum in which the questions were asked, the specific language used in the questions, the context in which the questions were asked, or understandable flaws in his ability to accurately and fully recall information at the time the questions were posed,"

---

3     *Skelly v. State Personnel Bd.* (1975) 15 Cal.3d 194, 215.

and the Chief's contrary conclusions were "based on speculation, assumptions, and on what appears to be the Chief's predisposition to believe that Ramirez was dishonest."

Recognizing "the Notice of Termination recites Ramirez's arrest on charges of sexual assault and the adverse publicity that resulted from Ramirez's sexual encounter with [V.] and his prosecution," the arbitrator purported to limit his written statement to the "three claims" as the only basis for the termination because "the Chief expressly testified that Ramirez's discipline was *not* based on his sexual encounter with [V.]."[4] Ultimately, the arbitrator included the following enumerated findings:

> "11. The evidence adduced at the hearing also suggests that the Chief's decision in this case might have been motivated by the embarrassment suffered by the Department that were the product of Ramirez's engaging in sexual conduct with [V.]

> "12. Because the Notice of Termination and [the Chief] made it clear Ramirez's sexual conduct with [V.] was not a basis for the decision to terminate [his] employment, it would be improper for the Chief to base any disciplinary decision in this matter on that apparently consensual sexual activity."

*The City Manager's Final Decision to Terminate Ramirez*

After carefully reviewing the arbitrator's written statement of advisory findings and recommendations, the MOU, the Chief's Notice of Intent to Terminate and Notice of Termination and associated attachments, the City's

---

4    In the "Statement of Facts" section of his written statement, the arbitrator more specifically states: "Chief Washburn expressly testified that the termination was *not* based, <u>by itself</u>, on Ramirez's sexual encounter with [V.]: [¶] Q. In your notice of termination, is there anything in there that says Mr. Ramirez's discipline was based on his sexual encounter <u>itself</u>? [¶] A. No, there is not. [¶] (T. 136.)" (Original italics, emphasis added.)])

5

policies, the Indio Police Department's policies and standards, the IA investigation documents and investigation transcripts, transcripts of criminal trial, and transcripts from the arbitration hearing and associated motions, responses, briefs, and exhibits, the City Manager issued a detailed final written decision on December 14, 2021, rejecting the arbitrator's advisory findings and recommendation and affirming the termination of Ramirez's employment.

The City Manager explained his decision was "based on [Ramirez's] poor judgment and conduct unbecoming an officer that [he] exhibited on the evening of August 5, 2016 and the following days. [Ramirez] admitted to using alcohol ('five to six beers over three and a half hours') and subsequently driving home while feeling the effects of the alcohol. That poor judgment led [Ramirez] to . . . engage in sexual acts with a young woman who had just turned 18 years old, resulting in her filing a police report against [him] for sexual assault. This young woman was related to [Ramirez] by marriage, and she considered [him] a father or uncle figure in her life. [Ramirez] violated her trust and the trust placed in [him] by the community as a sworn police officer. [Ramirez] subsequently demonstrated dishonesty in [his] statements and behaviors as the matter was investigated and tried. [Ramirez's] actions violated City policies, Department policies, and Standards of Conduct as noted in the Notice of Termination dated October 23, 2019."

The City Manager also specifically addressed the three claims identified by the arbitrator, concluding the City had demonstrated, by a preponderance of evidence, that Ramirez drove under the influence,[5] reset his department-issued cell phone with the intention to prevent the discovery

_____

[5] The City Manager noted the arbitrator "erroneously use[d] a criminal prosecution standard of 'beyond a reasonable doubt.' "

6

of incriminating information, and made dishonest and/or inconsistent statements during the investigations and trial regarding the alleged rape and sexual assault in violation of the Standards of Conduct, including policies 340.4 (General Standards), 340.5 (Causes for Discipline), 340.58 (Conduct, Law Enforcement Code of Ethics, and Expectations of Behavior).  He further explained "[Ramirez's] conduct in driving while under the influence of alcohol, resetting [his] Department-issued cellular phone during an active investigation, and [his] numerous inconsistent and dishonest statements demonstrate [his] lack of credibility and integrity.  [Ramirez's] actions show that [he] [is] unfit to be a police officer and . . . brought discredit and embarrassment upon the City."

*Petition for Writ of Mandate*

On April 26, 2022, Ramirez challenged the City Manager's final administrative decision by petitioning the superior court for writ of mandate pursuant to sections 1085 and 1094.5.  On May 30, 2023, the court issued a detailed Statement of Decision denying the writ petition.  The court rejected Ramirez's argument that the City Manager failed to defer to the arbitrator's findings and concluded "[t]he MOU is clear—the City Manager has the final authority to make the determinations, and the Court finds that the City Manager did not exceed his authority provided under the MOU in this respect."

The court also found the City Manager's findings that Ramirez drove while intoxicated, improperly reset his cell phone, and made dishonest/inconsistent statements were supported by sufficient evidence.  While the court determined some of Ramirez's statements were not inconsistent, it found "many of the inconsistent statements amount to dishonest[y], specifically in the context of the issue of whether [V.] consented

7

to the sexual contact. The issue of consent was the crux of [Ramirez's] defense at his criminal trial, and those are the statements that the Court finds are most relevant when determining Petitioner's honesty." The court concluded termination was the appropriate penalty "[g]iven the high standard that police officers are held to, and the position of trust that they have in our communities."

Formal judgment was entered on July 31, 2023, after Ramirez filed his notice of appeal.[6]

## II.

## DISCUSSION

A. *Applicable Law and Standards of Review*

On appeal from an administrative mandamus judgment, we perform the same function as the trial court. (*Jefferson Street Ventures, LLC v. City of Indio* (2015) 236 Cal.App.4th 1175, 1197.) "Abuse of discretion is established if the respondent has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence." (§ 1094.5, subd. (b).) As Ramirez does not argue the superior court's factual findings were not supported by substantial evidence, our review is limited to whether Respondents failed to "proceed[ ] in the manner required by law." (*Ibid.*)

Police officers have a statutory right to an administrative appeal of any punitive action under section 3304, subdivision (b) of the Public Safety Officers Procedural Bill of Rights Act (POBRA). (Gov. Code, § 3300 et seq.) The administrative appeal "shall be conducted in conformance with rules and procedures adopted by the local public agency," (*id.*, § 3304.5.) which in this

---

[6] We treat Ramirez's notice of appeal "as filed immediately after entry of judgment." (Cal. Rules of Court, rule 8.104(d)(2).)

case are set forth in the MOU's "Appeals Procedure." (MOU, Article 19.) In the absence of extrinsic evidence, we review de novo the interpretation of an MOU. (See *Santa Clara County Correctional Peace Officers' Assn., Inc. v. County of Santa Clara* (2014) 224 Cal.App.4th 1016, 1027.)

Our interpretation of the MOU is guided by the well-settled rules of contract interpretation. (*National City Police Officers' Assn. v. City of National City* (2001) 87 Cal.App.4th 1274, 1279 (*National City*).) The language of the MOU, if clear and explicit, governs our interpretation. (*Ibid.*) We view the language as a whole; we do not "use a 'disjointed, single-paragraph, strict construction approach,' " and we give effect to every provision and avoid an interpretation that renders a part of the MOU to be surplusage. (*Ibid.*) If the language is susceptible to two interpretations, we apply "the construction that will make the instrument lawful, operative, definite, reasonable and capable of being carried into effect and avoid an interpretation which will make the instrument extraordinary, harsh, unjust, inequitable or which would result in absurdity." (*Ibid.*) We endeavor "to effectuate the mutual intent of the parties as it existed at the time of contracting insofar as it is ascertainable and lawful." (*Ibid.*)

In addition to complying with POBRA and the terms of the MOU, "a public entity must accord constitutional procedural due process before depriving an officer of any significant property interest in his or her employment." (*Mays v. City of Los Angeles* (2008) 43 Cal.4th 313, 321, fn. 6.) We review a challenge to the procedural fairness of the administrative hearing de novo on appeal "since the ultimate question of procedural fairness amounts to a question of law." (*Anserv Ins. Servs. v. Kelso* (2000) 83 Cal.App.4th 197, 205.)

9

B. *MOU's Appeals Procedure*

Article 19 of the MOU, entitled "Appeals Procedure," was "designed to provide an appeal system for the fair and just resolution of any dispute, real or imagined, regarding proposed disciplinary action between the City of Indio and an employee." The parties to the MOU expressly intended "[t]o provide a procedure allowing for the right of appeal for disputes regarding proposed disciplinary action which could potentially result in an employee's loss of wages and/or benefits" and "[t]o provide an orderly procedure to handle the appeal through each level of supervision, if necessary, *with final decision being vested in the City Manager*." (MOU, Art. 19, italics added.)

The "orderly procedure" begins with section 19.1 of the MOU, which sets forth the preliminary steps in the process that ensure employees "have the right to notice and the opportunity to respond" prior to discharge "[p]ursuant to *Skelly*[, *supra*,] 15 Cal.3d 194." Section 19.2 is entitled "Evidentiary Appeal to Advisory Arbitration" and provides for the selection of an arbitrator and the scheduling of the "[a]ppeal [h]earing."

Section 19.3 governs the "Conduct of the Appeal Hearing" and includes multiple subsections. The third subsection, entitled "Arbitrator's Jurisdiction and Authority *During the Hearing*" (italics added), explains "[t]he Arbitrator has the authority to control the conduct of the hearing and to affirm, modify, or revoke the discipline imposed by the Appointing Authority or his/her designee," and the fourth subsection entitled "Conduct of the Hearing," delineates specific rules and procedures governing the admissibility of evidence during the hearing. Section 19.3 includes the one sentence underpinning Ramirez's argument—"The Arbitrator shall determine relevancy, weight and credibility of testimony and evidence."

10

Section 19.4, entitled "Written Advisory Findings and Recommendations" directs the arbitrator to "render a written statement of *advisory* findings and recommendations." Section 19.5, entitled "Final Decision on Appeal by City Manager," reiterates "[t]he Arbitrator's findings and conclusions will be *advisory* to the City Manager" but requires the City Manager to "review the Arbitrator's findings and recommendations." As the final decision maker, the City Manager is authorized to "affirm, revoke, or modify the findings, recommendations, or disciplinary action taken, as appears warranted to the City Manager."

C. *Ramirez's Proposed Interpretation of the MOU is Unsupported*

Although Ramirez acknowledges the MOU authorizes the City Manager to make the final decision, he argues the MOU must be interpreted to constrain the City Manager's authority by requiring him to defer to the arbitrator's determinations of the relevancy, weight and credibility of testimony and evidence during the hearing or at a minimum affording them "great weight." Ramirez's suggested interpretation ignores the rules of contractual interpretation by disregarding the MOU's express language and framework.

By extracting one sentence from the "Conduct of the Hearing" subsection in section 19.3 of the MOU's Appeals Process that directs the arbitrator to "determine relevancy, weight and credibility of testimony and evidence," Ramirez advocates a proscribed " ' " 'disjointed, single-paragraph, strict construction approach' " ' " (*National City*, *supra*, 87 Cal.App.4th at p. 1279) that would render the City Manager's express power to "affirm, revoke, or modify" the arbitrator's "advisory" findings in section 19.5 a surplusage. (*Ibid.* ["An interpretation which renders part of the instrument to be surplusage should be avoided."].) Ramirez's attempt to redefine the role

11

of the arbitrator also directly contradicts the express limitation of the arbitrator's jurisdiction and authority to the hearing itself in the subsection entitled "Arbitrator's Jurisdiction and Authority *During the Hearing*" (italics added), which immediately precedes the "Conduct of the Hearing" subsection upon which he relies.

As unequivocally stated in sections 19.3 and 19.4, the arbitrator had the authority to control the conduct of the appeal hearing, and to provide "advisory" findings and recommendations "to affirm, modify, or revoke the discipline imposed by the Appointing Authority or his/her designee." The City Manager's authority is further reflected in section 19.6, which provides "the City Manager's written findings and decision will be the City's final administrative decision on the employee's appeal" and informs employees of their right to timely petition the court for a writ of administrative mandate.

Nothing in the MOU's language or framework suggests any intent to extend the arbitrator's authority beyond the hearing itself or to require the City Manager to defer to the arbitrator's relevancy, weight and credibility findings. Nor does the City Manager's ability to affirm, revoke, or modify the arbitrator's findings "as appears warranted to the City Manager" give the City Manager unfettered discretion that would lead to "absurd results and mischief" as Ramirez contends. We must interpret this language to avoid an absurdity and "to effectuate the mutual intent of the parties as it existed at the time of contracting insofar as it is ascertainable and lawful." (*National City, supra*, 87 Cal.App.4th 1279.) An administrative appeal must "be conducted in conformance with rules and procedures adopted by the local public agency" (POBRA, §3304.5), and the MOU properly places the burden of proof on the City. (See *Caloca v. County of San Diego* (2002) 102 Cal.App.4th 433, 444–445 (*Caloca II*).) The City Manager remains obligated to proceed in

12

"the manner required by law" (§ 1094.5, subd. (b)), and section 19.6 informs employees of their right to challenge the final administrative decision by petitioning the court for a writ of mandate.

In addition to circumventing POBRA's requirement that the appeals procedure "be conducted in conformance with rules and procedures adopted by the local public agency" (Gov. Code, § 3304.5), Ramirez's proposed interpretation would fundamentally and unilaterally alter the negotiated MOU. (*National City*, *supra*, 87 Cal.App.4th at p. 1278 [once adopted, an MOU becomes a binding agreement that cannot be unilaterally altered]; see also *Glendale City Employees' Assn. v. City of Glendale* (1975) 15 Cal.3d 328, 336 (*Glendale*) ["Why negotiate an agreement if either party can disregard its provisions? What point would there be in reducing it to writing, if the terms of the contract were of no legal consequence? Why submit the agreement to the governing body for determination, if its approval were without significance?"].) Ramirez's interpretation would transmute the "Advisory Arbitration" into a binding arbitration that would strip the City Manager of his express power. (See *American Federation of State, County & Municipal Employees v. Metropolitan Water Dist.* (2005) 126 Cal.App.4th 247, 259 ["A hearing officer's decision [in an administrative appeal procedure under an MOU] is not final and binding where it is reviewable by a trial court under Code of Civil Procedure section 1094.5."].)

We find Ramirez's additional argument that his proposed interpretation is "compelled by the procedure typical in administrative and judicial forums where a subordinate hearing officer renders an otherwise nonbinding recommended decision to an ultimate decisionmaker" unavailing. Ramirez points to caselaw addressing inapplicable statutes in yet another attempt to circumvent POBRA and the intent of the parties to the MOU.

13

(See *Universal Camera Corp. v. NLRB* (1951) 340 U.S. 474 [considering the Administrative Procedures Act (APA) (5 U.S.C.S. § 1001 et seq.) and the Taft-Hartley Act (29 U.S.C.S. § 160 (e)), the Supreme Court held a Labor Board decision must be supported by substantial evidence]; *Garza v. Workers' Comp. Appeals Bd.* (1970) 3 Cal.3d 312 [the California Supreme Court annulled an appeal's board decision that was contrary to the referee's finding, noting the board's authority to reject the referee's findings on credibility matters if substantial evidence supports a contrary finding and "the established legislative policy . . . that the Workmen's Compensation Act must be liberally construed in the employee's favor (Lab. Code, § 3202)"]; *Absmeier v. Simi Valley Unified School District* (2011) 196 Cal.App.4th 311 [the Court of Appeal reversed the denial of Absmeier's challenge to a school district's decision to terminate his employment under the Education Code where the district failed to follow the hearing procedures]; and *California Youth Authority v. State Personnel Bd.* (2002) 104 Cal.App.4th 575 [section 11425.50, subdivision (b) of California's APA (Gov. Code, §§ 11340–11529) required deference to the administrative law judge's credibility findings only to the extent the administrative law judge identifies observed demeanor, manner or attitude of the witnesses].) Inapplicable statutes cannot guide our analysis in the face of POBRA, and by extension the MOU's "Appeals Procedure" that, unlike the APA, expressly permits the City Manager to reject the arbitrator's "advisory" findings. (See Gov. Code, § 11415.20 ["A state statute . . . applicable to a particular agency or decision prevails over a conflicting or inconsistent provision of [the APA]."])[7]

---

[7] Even assuming, hypothetically, that the APA applied here in some fashion, Ramirez does not contend the arbitrator's written statement identified any "specific evidence of observed demeanor, manner, or attitude"

We are also mindful that the negotiated MOU's "Appeals Procedure" was intended "to provide an appeal system for the fair *and just* resolution of . . . dispute[s]." (Italics added.) As the City Manager's final decision is subject to judicial review, we are loathe to adopt an interpretation that could limit the ability to revoke or modify advisory findings that are legally or factually unsupported. In this case, the arbitrator failed to consider Ramirez's sexual conduct with V. as a potential basis for his termination[8] and concluded the City failed to prove Ramirez drove while intoxicated by apparently holding the City to an incorrect, higher burden of proof.

We decline to adopt Ramirez's proposed interpretation and conclude that under POBRA and the unambiguous language and framework of the MOU's "Appeals Procedure," the City Manager was not required to defer to the arbitrator's relevancy, weight and credibility findings. Nor did Ramirez establish any violation of the MOU's "Appeals Procedure" by the City or the City Manager that could otherwise warrant reversal. Before exercising his authority to revoke the arbitrator's findings and recommendations, the City Manager fulfilled his duty under section 19.5 of the MOU to "review the Arbitrator's findings and recommendations" by performing "a complete and through review of [Ramirez's] appeal, including a review of the Hearing Officer's Advisory Findings and Recommendation." The City Manager went

_____

that would require the court to afford "great weight" under Government Code section 11425.50, subdivision (b) the APA.

[8] The arbitrator concluded "it would be improper for the Chief to base any disciplinary decision in this matter on th[e] apparently consensual sexual activity" based on a statement, contrary to the record, that "the Notice of Termination and [the Chief's testimony] made it clear [Ramirez's] sexual conduct with [V.] was not a basis for the decision to terminate [his] employment."

15

further by reviewing additional relevant documents and the transcripts and providing a detailed analysis supporting his conclusion that the City had successfully shouldered its burden of proof to show "justifiable cause for termination" by a preponderance of the evidence.

D. *Ramirez was afforded due process*

The MOU's "Appeals Procedure" also satisfies due process requirements. Police officers who are disciplined by their departments are entitled to procedural due process protections beyond POBRA's statutory requirement that no punitive action may be taken without an opportunity for administrative appeal. (See Gov. Code, § 3304, subd. (b); see also *Vitek v. Jones* (1980) 445 U.S. 480, 491 (1980) [minimum procedural requirements are a matter of federal law and "are not diminished by the fact that the State may have specified its own procedures that it may deem adequate for determining the preconditions to adverse official action"].)

"[D]ue process is flexible and calls for such procedural protections as the particular situation demands," (*Morrissey v. Brewer* (1972) 408 U.S. 471, 481) while ensuring the right to notice and a meaningful opportunity to be heard. (*Lachance v. Erickson* (1998) 522 U.S. 262, 266.) The amount of process required is determined by balancing "the private interest in retaining employment, the governmental interest in the expeditious removal of unsatisfactory employees and the avoidance of administrative burdens, and the risk of an erroneous termination." (*Cleveland Bd. of Educ. v. Loudermill* (1985) 470 U.S. 532, 542–543, 545 (*Cleveland Bd. of Educ.*); *Mathews v. Eldridge* (1976) 424 U.S. 319, 334–335 (*Mathews*).)

Prior to discharge, a permanent employee of a public agency must be given notice of the proposed termination, the reasons and the materials upon which the proposed termination is based, and the right to respond, either

16

orally or in writing, to the authority initially imposing discipline. (*Skelly, supra*, 15 Cal.3d at p. 215.) Due process does not require a full trial-type evidentiary hearing. (*Ibid*.) Although necessary, the pre-termination hearing "need not be elaborate." (*Cleveland Bd. of Educ., supra*, 470 U.S. at p. 545.) An employee is entitled to "oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." (*Id*. at p. 546.) In the context of an administrative appeal from a decision to terminate a police officer, the agency must carry the burden of proof and burden of production, and an independent decision maker "who has not been involved in the initial determination" must "bridge the analytic gap between the raw evidence and ultimate decision" and permit that ultimate decision to be reviewed by administrative mandate under section 1094.5. (*Caloca II, supra,* 102 Cal.App.4th at p. 444.)

The MOU's "Appeals Procedure" more than satisfied these due process requirements. After the Chief provided Ramirez with a Notice of Termination that included the specific reasons and materials upon which the proposed termination was based, Ramirez had an opportunity to respond to the Chief in writing (*Skelly, supra*, 15 Cal.3d at p. 215), and, at the appeal hearing before the arbitrator, the City maintained the burden of proof while Ramirez was given a meaningful opportunity to present his side of the story by presenting evidence and cross-examining witnesses. An independent arbitrator conducted a "de novo" re-examination of the chief's decision to terminate Ramirez and did not consider the chief's underlying findings as established. In addition to the advisory findings and recommendations of the arbitrator, the City Manager, who was similarly not involved in the decision to terminate Ramirez, conducted yet another independent re-examination of the Chief's decision and bridged the analytical gap between the raw evidence

17

and the ultimate decision upholding the termination. (See *Joseph v. City of Atwater* (2022) 74 Cal.App.5th 974, 988 citing *Caloca II, supra,* 102 Cal.App.4th at p. 444.)

We will not disturb a negotiated MOU that sufficiently protected Ramirez's due process rights. To require more "would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee." (*Cleveland Bd. of Educ., supra*, 470 U.S. at p. 546.) "[W]hile it is imperative that courts retain the power to compel agencies to use decisionmaking procedures that provide a constitutionally adequate level of protection . . ., judges should be cautious in exercising that power. In the vast bulk of circumstances, the procedures chosen by the legislature or by the agency are likely to be based on application of a *Mathews*-type cost-benefit test by an institution positioned better than a court to identify and quantify social costs and benefits. A court should give serious consideration to second-guessing a legislative or agency choice of procedures only when it has indications that the agency or legislature chose its procedures in bad faith or without considering the implications of its choice of procedures." (*Mohilef v. Janovici* (1996) 51 Cal.App.4th 267, 288–289.)

The City and the City Manager "proceeded in the manner required by law." (§ 1094.5, subd. (b).) There was no abuse of discretion.

## III.

## DISPOSITION

The superior court's judgment is affirmed.  Respondents are entitled to costs on appeal.

KELETY, J.

WE CONCUR:


McCONNELL, P. J.


RUBIN, J.

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT
DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| SERGIO RAMIREZ,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>CITY OF INDIO et al.,<br><br>    Defendants and Respondents. | D082997<br><br><br>(Super. Ct. No. CVPS2201660)<br><br>ORDER CERTIFYING<br>OPINION FOR PUBLICATION |

THE COURT:

The opinion in this case filed on September 13, 2024, was not certified for publication. On October 2, 2024, Respondents filed a request for publication, and on October 4, 2024, Appellant filed opposition. It appearing the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c), the request pursuant to rule 8.1120(a) for publication is GRANTED.

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c); and

ORDERED that the words "Not to Be Published in the Official Reports" appearing on page one of said opinion be deleted and the opinion herein be published in the Official Reports.

McCONNELL, P. J.

cc:  All parties